Melissa TEMPLE, Plaintiff,

v.

AUTO BANC OF KANSAS, INC., Defendant.

No. 98–2533–JWL.

United States District Court, D. Kansas.

Nov. 2, 1999.

Andrea P. Bolstad, Bolstad & Porembski, Liberty, MO, for Plaintiff.

Melissa Temple, Independence, MO, pro se.

Donald R. Whitney, Thomas L. Griswold, Payne & Jones, Chtd., Overland Park, KS, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Melissa Temple filed suit against defendant Auto Banc of Kansas, Inc., alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Kansas Act Against Discrimination, K.S.A. § 44–1001 et seq. Specifically, plaintiff claims that she was subjected to sexual harassment during her employment with defendant and that, after plaintiff complained about the allegedly harassing conduct, defendant retaliated against her by terminating her employment and filing a deficiency action against her in state court.

This matter is presently before the court on several motions for partial summary judgment filed by defendant: defendant's "motion for partial summary judgment # 1—on plaintiff's claim for hostile working environment" (doc. # 26); defendant's "motion for partial summary judgment # 2—on plaintiff's claim for hostile working environment—no material affect on employment—discharge not result of objection to any hostile environment" (doc. # 28); defendant's "motion for partial summary judgment # 3—on plaintiff's post-employment retaliation claims" (doc. # 30); defendant's "motion for partial summary judgment # 4—on plaintiff's post-employment retaliation claims" (doc. # 37) and defendant's "motion for partial summary judgment # 5—limitation on plaintiff's recovery of employment benefits" (doc. # 39). As set forth in more detail below, summary judgment in favor of defendant is granted on all of plaintiff's claims and plaintiff's complaint is dismissed in its entirety.

## I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Defendant Auto Banc of Kansas, Inc. operates an automobile dealership in Kansas City, Kansas. On June 1, 1997, plaintiff Melissa Temple began her employment with defendant as a retail car salesperson. On Friday, July 18, 1997 and Saturday, July 19, 1997, the dealership hosted a promotional sales event. The sales event had a "beach party" theme. For the two-day event, the dealership set up a hot tub on the showroom floor and hired two female models to lounge in the hot tub and otherwise participate in the sales event. The dealership also hired two local radio personalities to broadcast their shows from the dealership in an effort to draw customers into the showroom.

The sales event commenced at 4:00pm on Friday. At that time, according to plaintiff, the two female models prepared to take their places in the hot tub. The women thus removed their outer garments, revealing thong bikinis underneath. Plaintiff testified that she was offended by the presence of the two females in their swimwear. She immediately complained

to her supervisor, John Howden. Specifically, plaintiff told Mr. Howden that "she was trying to conduct a sale, and that [she] was a little unsure of what [was] going on . . . here." Mr. Howden assured plaintiff that he did not know that the women would be wearing swimwear (or, perhaps, the particular type of swimwear) for the promotion. Plaintiff further testified that she wanted Mr. Howden "to do something right then." As plaintiff explained, "I had a customer at my desk. I didn't feel comfortable. My customer was going to be exposed to this. I didn't see how I was going to proceed with my sale."

Plaintiff then returned to her desk where her customer was waiting. At the same time, one of the models approached plaintiff's customer. Apparently, plaintiff's customer and the model were old acquaintances. Plaintiff described the situation as follows:

> And so now I have this lady who has been in the hot tub, with her rearend exposed, less than a foot and a half from me, as she leans her rearend on my desk, water dripping, talking to my customer. And it had to be the most horrifying experience I have had in all my years of car sales. It was just—it couldn't have been any closer unless she sat on me.

The model then introduced plaintiff's customer to the other model. Plaintiff testified that she did not know what to do, so she just "sat there, horrified." Plaintiff's customer then advised the models that he was trying to purchase a car. According to plaintiff, the model advised plaintiff's customer where she worked and told him that she would like to see him again. As soon as the model returned to the hot tub area, plaintiff's customer apologized to plaintiff. Plaintiff estimated that this encounter lasted approximately 5 to 10 minutes.

Plaintiff quickly finished her sale and, at approximately 4:30pm, went back to talk to her supervisor, Mr. Howden. Plaintiff advised Mr. Howden that "she did not appreciate being put in this situation." According to plaintiff, she asked Mr. Howden whether he could ask the models to put their clothing back on, but Mr. Howden refused. Mr. Howden told plaintiff that she could go home for the day. Before leaving the workplace, plaintiff asked Mr. Howden whether the sales event scheduled for the following day "was going to be the same thing." Mr. Howden assured plaintiff that it would not be the same. Plaintiff left the workplace at approximately 4:30pm.

Plaintiff returned to work on Saturday morning at 8:00am. At some point between 11:00am and 11:30am, the models returned to the dealership. Shortly thereafter, the models removed their outer garments, revealing swimwear similar to what they were wearing on Friday. Immediately, plaintiff located Mr. Howden and said to him, "I thought you told me these girls weren't going to be here, and I thought you told me there was not going to be a promotion where women would be exposed." According to plaintiff, Mr. Howden responded, "It is not your decision." At that point, plaintiff returned to her desk. She then contacted Gary Wiles, a high-level manager within the Auto Banc organization. Plaintiff informed Mr. Wiles of the promotional event, including the incident when the model sat on her desk. She told Mr. Wiles that she was offended by the situation and that she was extremely upset. Mr. Wiles explained to plaintiff that he would investigate the situation and assured plaintiff that her "job was intact." Finally, Mr. Wiles told plaintiff "that the best thing that he could suggest for [her] to do was to get in [her] car and go home." Plaintiff left the workplace at approximately 12:00pm on Saturday.

On August 5, 1997, defendant terminated plaintiff's employment. According to defendant, plaintiff was discharged based on her lack of sales production. The decision to discharge plaintiff was made by John Howden and Robert Hennessey, an officer of the defendant corporation. During her employment with defendant, plaintiff was compensated based on commissions earned from sales. Plaintiff received

$950 per month as an advance for commissions earned. During June 1997 and July 1997, the advances that plaintiff received exceeded her commissions earned.

In January 1998, plaintiff filed a charge of discrimination with the EEOC, alleging sexual harassment based on defendant's sales event and retaliation based on her discharge. In March 1998, John Chezik Homerun, Inc., d/b/a John Chezik Honda brought an action against plaintiff in state court to recover a deficiency on a lease for a vehicle that plaintiff had leased from John Chezik Homerun, Inc.[1] In March 1999, the Court in the deficiency action entered a consent judgment in favor of John Chezik Homerun, Inc. d/b/a John Chezik Honda.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement

to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

In her complaint, plaintiff alleges that she was subjected to hostile work environment sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Kansas Act Against Discrimination, K.S.A. § 44–1001 et seq.[2] As set forth in

---

**1.** At some point prior to her employment with defendant, plaintiff was employed by John Chezik Homerun, Inc. d/b/a John Chezik Honda. John Chezik is apparently an officer of both defendant Auto Banc of Kansas, Inc. and

John Chezik Homerun, Inc. d/b/a John Chezik Honda.

**2.** The court applies the same standards and burdens to plaintiff's KAAD claims as applied

more detail below, the court concludes that plaintiff cannot state a prima facie case of hostile work environment sexual harassment. Thus, defendant's motion for summary judgment is granted on plaintiff's hostile work environment claim. Moreover, the court concludes that plaintiff has failed to produce evidence from which a reasonable jury could conclude that defendant retaliated against her for complaining about the alleged harassment. Thus, the court grants defendant's motions for summary judgment on plaintiff's retaliation claim.

### A. Sexual Harassment Claim

In support of its motion for partial summary judgment # 1, defendant argues that plaintiff has failed to state a prima facie case of hostile work environment sexual harassment. As set forth in more detail below, the court agrees. After carefully considering plaintiff's evidence concerning the alleged conduct, the totality of the circumstances, and the applicable standard for analyzing a hostile work environment claim, the court concludes that plaintiff has not made a sufficient showing to withstand summary judgment on this claim. Specifically, plaintiff has failed to come forward with evidence of sexual harassment sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Moreover, the record does not support a finding that the conduct at issue was based on plaintiff's sex. Accordingly, the court grants defendant's motion for partial summary judgment on this claim.

■ Title VII prohibits an employer from discriminating against an employee on the basis of sex with respect to "compensation, terms, conditions, or privileges"

of employment. *Penry v. Federal Home Loan Bank,* 155 F.3d 1257, 1261 (10th Cir.1998) (citing 42 U.S.C. § 2000e–2(a)(1)). It is well established that this prohibition encompasses sexual harassment in the workplace. *See, e.g., Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir.1998). It is clear, however, that "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1365 (10th Cir.1997) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

■ For a hostile work environment claim to survive summary judgment, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *O'Shea v. Yellow Technology Servs., Inc.,* 185 F.3d 1093, 1097 (10th Cir.1999) (quoting *Penry,* 155 F.3d at 1261) (quoting *Davis v. United States Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir.1998)). The severity and pervasiveness of the conduct must be judged from both an objective and a subjective perspective. *Id.* (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).[3]

■ The objective severity or pervasiveness of the alleged harassment is measured from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Id.* at 1098 (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998,

to her Title VII claims and reaches the same conclusions under both statutes. *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1403 n. 3 (10th Cir.1997).

3. Defendant does not appear to take issue with whether plaintiff subjectively found her work environment to be hostile. In any event, plaintiff's testimony is sufficient evidence from which a reasonable jury could

conclude that plaintiff subjectively found her work environment to be hostile. Thus, the court concludes, for purposes of analyzing defendant's motion, that plaintiff has adequately established the subjective component of her sexual harassment claim. For this reason, the court focuses its analysis of plaintiff's claim only on the objective severity or pervasiveness of the work environment.

1003, 140 L.Ed.2d 201 (1998)). Such circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). The court also considers the context in which the conduct occurred. *Id.* at 1096 (quoting *Penry,* 155 F.3d at 1262) (quoting *Meritor,* 477 U.S. at 69, 106 S.Ct. 2399).

■ Plaintiff concedes that her sexual harassment claim is based solely on the two-day sales event at the dealership. According to defendant, this conduct was neither sufficiently severe nor sufficiently pervasive to create a hostile work environment. The court agrees. Even assuming the activities at the sales event offended plaintiff, the atmosphere in the showroom was simply not severe or pervasive enough to create an objectively hostile work environment. Significantly, the sales event was an isolated incident—the models were in the showroom for a few hours over a two-day period. It is well established that "isolated incidents of harassment, while inappropriate and boorish, do not constitute pervasive conduct." *Smith v. Norwest Financial Acceptance, Inc.,* 129 F.3d 1408, 1414 (10th Cir.1997) (citing *Bolden v. PRC, Inc.,* 43 F.3d 545, 551 (10th Cir.1994)); *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1366 (10th Cir.1997) (five separate incidents perpetrated by plaintiff's supervisor, although "unpleasant and boorish," were not sufficiently severe or pervasive to create an actionable hostile work environment).

Additionally, nothing about the sales event was physically threatening to plaintiff. In fact, the conduct about which plaintiff complains was not directed at her. Presumably, defendant's sales event (with bikini-clad models) was calculated to draw male customers into the dealership. This fact further weakens plaintiff's claim. *See Cowan v. Prudential Ins. Co. of Am.,* 141 F.3d 751, 758 (7th Cir.1998) (affirming grant of summary judgment for defendant on sexually hostile work environment claim in part because use of provocatively dressed cheerleader in company manual distributed to clients, circulation of "safe sex" cartoon and circulation of photograph that one employee had had taken with a stripper was not directed at plaintiff). The impact of this type of "second-hand harassment" is "obviously not as great as the impact of harassment directed at the plaintiff." *See id.* Construing the evidence in the light most favorable to plaintiff, the court concludes that the presence of the models in defendant's showroom, standing alone, is simply insufficient to state a claim for sexual harassment under Title VII. *See Vendetta v. Bell Atlantic Corp.,* No. CIV.A. 97–4838, 1998 WL 575111, at *7 (E.D.Pa. Sept.8, 1998) (photographs of "scantily clad" women in workstation of plaintiff's coworker "will not alone support the existence of a fact issue as to whether [defendant] maintained a workplace in which gender-based discrimination was severe and pervasive.").

Moreover, the circumstances surrounding the sales event were not "because of plaintiff's sex" and, thus, cannot alone support a finding of liability for sexual harassment. *See Penry,* 155 F.3d at 1263. As described above, the circumstances surrounding the sales event had nothing at all to do with the plaintiff or her sex. Rather, the nature of the sales event strongly suggests that it was aimed at potential purchasers, most likely male purchasers. In other words, defendant would have been as likely to have a "beach party" sales event regardless of whether plaintiff or any other female salespersons were present in the workplace. While the sales event itself certainly has sexual overtones and, thus, might be relevant when evaluating whether other conduct in the workplace was in fact gender-motivated or whether gender-motivated conduct was so severe or pervasive to create Title VII liability, plaintiff here complains about no other conduct. *See id.* (evidence that supervisor had taken female subordinate to Hooters restaurant was not "because of the plaintiff's gender"

where supervisor was just as likely to take a male subordinate to Hooters; such evidence could not be the basis for liability under Title VII for sexual harassment, but would be relevant when considering other conduct in the workplace). Standing alone, then, the sales event was not based on plaintiff's sex and cannot be the basis for plaintiff's sexual harassment claim.

For all of the above reasons, summary judgment is granted in favor of defendant on plaintiff's sexual harassment claim.

### B. Retaliation Claims

Plaintiff also claims that, after she complained about the sales event, defendant retaliated against her by terminating her employment. Plaintiff further claims that an entity related to defendant filed a deficiency action against her in state court in retaliation for plaintiff's filing a charge of discrimination with the EEOC. With respect to plaintiff's retaliatory discharge claim, the court concludes that plaintiff has failed to produce evidence from which a reasonable factfinder could conclude that defendant's proffered explanation for its decision was "unworthy of credence." Accordingly, as set forth in more detail below, summary judgment in favor of defendant is appropriate on plaintiff's retaliatory discharge claim. With respect to plaintiff's claim that an entity related to defendant filed a deficiency action against her in retaliation for filing an EEOC charge, plaintiff has failed to present any evidence that defendant played a part in filing or pursuing the deficiency action. Thus, summary judgment in favor of defendant is appropriate on this retaliation claim as well.

The court analyzes plaintiff's retaliation claim under the familiar burden-shifting framework first pronounced in *McDonnell*

*Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Berry v. Stevinson Chevrolet,* 74 F.3d 980, 985 (10th Cir.1996) ("The general approach to Title VII suits set forth in *McDonnell Douglas Corp. v. Green* and *Burdine* also applies to retaliation claims under section 704(a)." (citations omitted) (quoting *Love v. RE/MAX of Am., Inc.,* 738 F.2d 383, 385 (10th Cir.1984))).

Plaintiff must first establish a prima facie case of retaliation by demonstrating that (1) she engaged in protected activity; (2) she suffered an adverse employment action by her employer either after or contemporaneous with her protected activity; and (3) a causal connection exists between her protected activity and the adverse employment action. *Id.* (citing *Love,* 738 F.2d at 385 (citing *Burrus v. United Tel. Co.,* 683 F.2d 339, 343 (10th Cir.1982))). Once plaintiff establishes her prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decisions. *Id.* at 986 (citing *Love,* 738 F.2d at 385 (citing *Burrus,* 683 F.2d at 343)). If the defendant comes forward with a legitimate nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is a mere pretext for discrimination. *Id.*

#### 1. Retaliatory Discharge

In its motion for partial summary judgment #2, defendant moves for summary judgment on plaintiff's claim that she was discharged in retaliation for raising concerns about the sales event or, more specifically, about the bikini-clad models participating in the sales event.[4] According to

---

4. In its motion for partial summary judgment #2, defendant asserts another reason that it believes it is entitled to summary judgment on plaintiff's sexual harassment claim, i.e., that plaintiff cannot establish that the purported hostile work environment "materially affected the terms and conditions of her employment." Because the court grants defendant's motion

for partial summary judgment #1 on plaintiff sexual harassment claim, the court need not address this additional argument set forth in motion #2. Nonetheless, the court notes that the relevant inquiry in analyzing a sexual harassment claim is whether the conduct is "sufficiently severe or pervasive to alter the

defendant, plaintiff cannot establish the first and third elements of her prima facie case of retaliation and, in any event, cannot establish that defendant's proffered reason for terminating her employment was pretextual.

With respect to the first element of plaintiff's prima facie case, the court has some doubts concerning whether the content of plaintiff's "complaints" here constitute the type of activity that is protected under Title VII. Plaintiff's complaints about the presence of the models in the workplace seemed to stem more from plaintiff's concern about her ability to make a sale rather than from a concern that she was being subjected to discrimination in the form of sexual harassment. The court also has some doubt with respect to whether plaintiff has come forward with sufficient evidence from which a jury could reasonably conclude that a causal connection exists between her protected activity and her discharge. This is particularly true in light of the content of plaintiff's complaints. In other words, even though Mr. Howden terminated plaintiff's employment just two and one-half weeks after she complained about the sales event, it is quite possible that Mr. Howden failed to understand that plaintiff's was complaining about harassment in the workplace. Without knowledge that plaintiff was complaining about sexual harassment in the workplace, Mr. Howden could not retaliate against her on the basis of those complaints.

■ In any event, the court need not decide whether plaintiff has established a prima facie case of discrimination because, even assuming that plaintiff's evidence is sufficient to support a prima facie case, plaintiff has not shown that defendant's proffered reason for terminating her employment was pretextual. *See Anderson v. Coors Brewing Company*, 181 F.3d 1171,

1180 (10th Cir.1999) (even assuming time between plaintiff's termination and the filing of her EEOC charge is sufficient to establish causal connection for purposes of prima facie case of retaliation, it could not overcome defendant's proffered reason for terminating plaintiff's employment). As the Tenth Circuit has consistently emphasized, a plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *See, e.g., id.* at 1179 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997)). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. *Id.* (citing *Morgan*, 108 F.3d at 1323).

■ According to defendant, plaintiff was discharged because of her unsatisfactory sales performance. According to defendant's evidence, the advances plaintiff's received during the two months of her employment exceeded her earned commissions. According to Mr. Howden, plaintiff was selling only two to three cars per month.[5] Mr. Howden testified that plaintiff, for whatever reason, simply was not greeting customers on the lot, was not "aggressive" in terms of taking credit applications and was not following up appropriately with customers. Mr. Howden further testified that plaintiff would frequently take two to three hour lunch breaks. In sum, Mr. Howden explained that plaintiff was discharged because of her "lack of sales production." Defendant has satisfied its burden of producing evidence of a legitimate, nondiscriminatory reason for its employment decision.

---

conditions of the victim's employment." *See, e.g., Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1263 (10th Cir.1998). The court has decided this issue in favor of defendant in connection with its initial motion for partial summary judgment. The court does not be-

lieve that a separate "materiality" element need be proven by a plaintiff to recover for sexual harassment in the workplace.

**5.** With her prior employer, plaintiff sold six to nine cars per month.

In support of her pretext argument, plaintiff first simply "denies that her sales production was any different from the other salespersons at the dealership at that time." Plaintiff, however, directs the court to no evidence in the record that might support such an assertion. The court, then, cannot consider this assertion in its analysis of plaintiff's claim. *See* Fed. R.Civ.P. 56(e); *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998) (in summary judgment context, facts "from which a rational trier of fact could find for the nonmovant ... must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein").

In the alternative, plaintiff argues that her performance suffered, at least in part, because one day each week she worked as a "back up" finance person rather than as a salesperson. Thus, according to plaintiff, she had only four days each week to sell cars while other employees had five days to make their sales. In the same vein, plaintiff maintains that her performance suffered because she was denied the opportunity to sell cars during the two-day promotional event, having left the workplace early on both days. These arguments misunderstand the focus of the court's inquiry in a pretext case. The court is concerned solely with whether the reason asserted by defendant or, more specifically, by John Howden for plaintiff's discharge was a pretext for discrimination. The Tenth Circuit has repeatedly cautioned that district courts do not sit as "super-personnel departments" free to second guess the business judgment of an employer. *See, e.g., Simms v. State of Oklahoma*, 165 F.3d 1321, 1330 (10th Cir. 1999). In other words, the court is not concerned with whether the employer's proffered reason for its decision is unfair, unwise, or even incorrect, so long as it truly was the reason for the plaintiff's discharge. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999); *see also Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 677 (7th Cir.1997) ("Arguing about the accuracy of the employer's assessment [of plaintiff's performance] is a distraction, because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest."). The key inquiry, then, is whether Mr. Howden genuinely believed that plaintiff's performance was unsatisfactory and relied on that belief in terminating plaintiff's employment. Nothing in the record suggests that Mr. Howden did not actually believe that plaintiff's performance was inadequate. Plaintiff's opinion regarding the fairness or accuracy of Mr. Howden's assessment does not create a genuine issue of fact for trial.

Plaintiff's only remaining argument in support of her pretext showing is that she performed well and received various promotions during her employment with other dealerships—all prior to her employment with this defendant. This, too, is simply not probative of pretext. As an initial matter, the mere fact that plaintiff may have satisfied the performance standards of a prior employer does not mean that she meets the performance standards of this employer. *See Nelms v. Modisett*, 153 F.3d 815, 821 (7th Cir.1998). In any event, the Tenth Circuit has recognized that prior, positive performance evaluations or past promotions do not, by themselves, create a genuine fact issue regarding the sincerity of the decisionmaker's belief at the time of the discharge decision. *See Eilam v. Children's Hospital Ass'n*, 173 F.3d 863, 1999 WL 176128, at *3–4 (10th Cir. Mar.31, 1999) ("To hold otherwise would be to hold that things never change, a proposition clearly without basis in reality." (quoting *Billet v. CIGNA Corp.*, 940 F.2d 812, 826 (3d Cir.1991))); *see also Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) (holding that prior performance evaluations "cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the [adverse] employment action is taken"). In essence, then, plaintiff's evidence that she received promotions for her performance with prior

employers fails to demonstrate that the decisionmakers here did not actually believe that plaintiff's performance was inadequate and the true basis for her discharge.

In sum, plaintiff has failed to come forward with sufficient evidence that defendant's explanations for its actions are a mere pretext for discrimination. Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim. *See Randle v. City of Aurora*, 69 F.3d 441, 451 n. 14 (10th Cir.1995) (explaining that "the defendant would ... be entitled to summary judgment if plaintiff could not offer evidence tending to show the defendant's innocent explanation for his employment decision was false").

### 2. Retaliatory Filing of Deficiency Action

In its motion for partial summary judgment # 3, defendant moves for summary judgment on plaintiff's "post-employment" retaliation claim—the filing of a deficiency action against her. As set forth above, to establish a prima facie case of retaliation, plaintiff must show that she suffered an adverse action by *her employer* and that a causal connection exists between the adverse action and her protected activity. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir.1996). With respect to her claim that the deficiency action was filed against her in retaliation for her filing an EEOC charge, plaintiff cannot establish either of these elements.

Plaintiff claims that in March 1998, more than six months after her discharge and two months after filing her EEOC charge, an entity related to defendant filed a deficiency action against her in state court.[6] The facts establish that the deficiency action against plaintiff was filed by John Chezik Homerun, Inc., d/b/a John Chezik Honda in connection with a vehicle that plaintiff had leased from John Chezik Homerun, Inc., one of plaintiff's prior em-

ployers. Plaintiff does not dispute these facts. She simply alleges that John Chezik is an officer of both defendant Auto Banc of Kansas, Inc. and John Chezik Homerun, Inc. d/b/a John Chezik Honda. According to plaintiff, the mere fact that John Chezik is an officer of both corporations is sufficient evidence from which a jury could conclude that John Chezik Homerun, Inc. filed the deficiency action in retaliation for her filing an EEOC charge against Auto Banc of Kansas, Inc. In essence, plaintiff speculates that John Chezik made the decision to pursue a deficiency action against her because she filed an EEOC charge against Auto Banc of Kansas, Inc.

 Clearly, the deficiency action was filed by an entity other than the defendant. Moreover, there is no evidence in the record that defendant Auto Banc of Kansas, Inc. or any of its officers or agents played any part in the decision by John Chezik Homerun, Inc. to file and pursue the deficiency action against plaintiff. According to plaintiff's evidence, the only connection between the two entities is that John Chezik is an officer of both entities. Significantly, plaintiff has failed to come forward with any evidence whatsoever that John Chezik knew that plaintiff had raised concerns about the sales event or that plaintiff had filed an EEOC charge against Auto Banc of Kansas, Inc. In fact, Mr. Chezik testified in his deposition that he did not even know that plaintiff had leased a car from John Chezik Homerun, Inc. until after plaintiff had filed her lawsuit. This testimony is uncontroverted by plaintiff. Thus, plaintiff cannot establish a causal connection between the filing of her EEOC charge and the filing of the deficiency action against her. *See Sanchez v. Denver Public Schools*, 164 F.3d 527, 534 (10th Cir.1998) (affirming dismissal of retaliation claim on summary judgment where plaintiff presented no evidence that decisionmaker knew that plaintiff had filed

---

**6.** The Supreme Court has held that "post-employment" retaliation claims are viable. *See Robinson v. Shell Oil Co.*, 519 U.S. 337,

117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (former employees are protected by the anti-retaliation provisions of Title VII).

charge of discrimination); *Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993) (same).

Even when all reasonable inferences are drawn in her favor, plaintiff has failed to establish a prima facie case of retaliation based on the filing of a deficiency action against her. Thus, defendant's motion for partial summary judgment #3 on plaintiff's post-employment retaliation claim is granted and defendant's motion for partial summary judgment #4 is moot.[7]

## C. Recovery of Employment Benefits

Defendant's final motion for partial summary judgment seeks to limit plaintiff's recovery of lost earnings or benefits in light of uncontroverted evidence that defendant ceased doing business in December 1998. Because the court has granted summary judgment in favor of defendant on all of plaintiff's claims, it need not address the nature and extent of damages plaintiff might recover. This motion is moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for partial summary judgment #1 (doc. #26) is **granted;** defendant's motion for partial summary judgment #2 (doc. #28) is **granted;** defendant's motion for partial summary judgment #3 (doc. #30) is **granted;** defendant's motion for partial summary judgment #4 (doc. #37) is **moot;** and defendant's motion for partial summary judgment #5 (doc. #39) is **moot.** Plaintiff's complaint is dismissed in its entirety. It is further ordered that defendant's motion to strike plaintiff's Rule 26(a)(3) disclosures and Rule 26(e) supplementation (doc. #57) is **moot.**

**IT IS SO ORDERED.**

---

7. Defendant's motion for partial summary judgment #4 simply sets forth additional reasons that defendant believes it is entitled to summary judgment on plaintiff's post-employment retaliation claim. Because the court has granted defendant's motion for partial summary judgment #3 on this claim, it need not address the arguments set forth in motion #4.