# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3115

_____

Janet L. Brower, an individual,　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Plaintiff / Appellant,　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
v.　　　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of Nebraska.
Marvin T. Runyon, Postmaster General, *
United States Postal Service,　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Defendant / Appellee.　　*

_____

Submitted: April 23, 1999
Filed:　June 2, 1999

_____

Before McMILLIAN and MURPHY, Circuit Judges, and MONTGOMERY,[1]
District Judge.

_____

MURPHY, Circuit Judge.

　　　Janet L. Brower did work for the United States Postal Service (USPS) under a contract it had with her employer, and she unsuccessfully applied for at least one position with USPS. She later sued Marvin T. Runyon, Postmaster General, claiming that she had been retaliated against for engaging in conduct protected under Title VII.

_____

　　　[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, sitting by designation.

The district court[2] granted summary judgment to Runyon, and Brower appeals. We affirm.

## I.

Brower was hired by Environmental Services Company in August 1994, and under a contract that company had with USPS she worked as an environmental compliance coordinator in the USPS district office in Omaha, Nebraska. In September 1995 Brower became aware that USPS planned to hire environmental compliance coordinators directly, and she applied for one of these positions. She was interviewed for a level 19 position in Omaha but was not selected. Sometime later she told her supervisor of her interest in a more senior position (level 23) at the area office in St. Louis, Missouri. Applications were not taken for the St. Louis position from non-USPS employees, but individuals who had previously applied and been interviewed for level 19 positions were included in the applicant pool. Brower thus came within the applicant pool, but she was neither interviewed nor selected for the level 23 position.

Shortly after learning she would not be interviewed for the St. Louis position, Brower contacted an Equal Employment Opportunity (EEO) counselor in the Omaha USPS office on April 9, 1996 to obtain more information regarding the selection process for the position. She did not allege in this visit that she had been discriminated against during the selection process, and the EEO counselor took no action in response to her visit. The next day Brower telephoned Jan Smith, the acting manager for human resources for the USPS area office. Brower asked Smith about the status of the level 23 position, said that she had been given misinformation about the process by her supervisor, and requested an explanation as to why she had not

---

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

been interviewed. Smith was either unable or unwilling to answer some of Brower's questions. Brower became frustrated and angry, raised her voice, and threatened to call Smith's superiors. She indicated that she believed her only remaining alternative was to seek "legal recourse . . . through a civil suit," but she did not mention her prior visit to the EEO counselor or allege that she had been discriminated against based on race, color, religion, sex, or national origin.

Smith subsequently contacted Michael Matuzek, the district manager, and Bill Brown, the vice president of Midwest area operations, to advise them of her telephone conversation with Brower and to suggest that she be removed from the premises because her access to USPS facilities and computers posed a security risk. Brower was asked to leave the USPS facility on April 11, and the contract for her services was terminated shortly thereafter.

Brower filed a retaliation complaint with the EEO office in Omaha in May. After receiving a notice of right-to-sue, she filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17, alleging that USPS had retaliated against her for "participating in making charges under Title VII." She did not allege in either her EEO or district court complaint, however, that the application process for the level 23 position was discriminatory or that she had not received an interview in retaliation for engaging in protected conduct. Instead, she claimed that USPS had impermissibly terminated the contract for her services in retaliation for her participation in a Title VII proceeding.

The district court granted Runyon's motion for summary judgment after finding that Brower had not engaged in activity protected under Title VII and that there was no causal connection between what she claimed as protected activity and the adverse employment action. Her claim focused on the application process for the St. Louis position. The court observed that there might be a genuine issue as to whether

3

plaintiff was an applicant for the level 23 position, but that issue was moot because Brower had failed to state a claim covered under Title VII.

## II.

On appeal, Brower argues that as an applicant for USPS employment she was protected by the anti-retaliation provisions of Title VII and that the district court erred in concluding that she had neither engaged in any statutorily protected activity nor shown a causal connection between such activity and the termination of the contract for her services. Runyon responds that the district court's analysis was correct and that Brower's claim also fails because the adverse employment action complained of was unrelated to her status as an applicant for employment.

A grant of summary judgment is reviewed de novo and only affirmed if the full record establishes that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 610 (8th Cir. 1998). All justifiable factual inferences must be made in favor of the non moving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), but that party must do more than rely on denials or allegations in the pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Summary judgment is appropriate if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial. Id.; Sweeney v. City of Ladue, 25 F.3d 702, 703 (8th Cir. 1994).

### A.

Title VII of the Civil Rights Act of 1964 protects employees and applicants for employment from discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e - 2000e-17. Its protections apply to certain federal employees including employees and applicants for employment in the postal service.

4

42 U.S.C. 2000e-16(a). The clause at the heart of this case is the "participation clause" which makes it unlawful for employers to retaliate against an employee or applicant for employment because she "made a charge, testified, assisted, or *participated in any manner in an investigation, proceeding, or hearing under this subchapter*." 42 U.S.C. § 2000e-3(a) (emphasis added).[3] To establish a prima facie case of retaliatory discrimination, Brower must show that she engaged in protected activity, that an adverse employment was taken against her, and that there was a causal connection between the two. Cross v. Cleaver, 142 F.3d 1059, 1071 (8th Cir. 1998); Sims v. Sauer-Sundstrand Co., 130 F.3d 341, 343 (8th Cir. 1997).

Brower challenges the district court's conclusion that she did not engage in any activity protected under Title VII. She asserts that she took part in protected activity when she visited the EEO counselor and when she told acting human resources manager Smith on the phone that there might be future legal action. Conduct is only protected, however, if it qualifies as participation "in any manner" in a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). It is clear that no proceeding or investigation existed before April 9, 1996 when Brower visited the EEO counselor. The critical question is whether her visit to the EEO counselor or her telephone conversation with Smith could be said to have initiated a Title VII proceeding or investigation.

Our cases provide limited guidance as to the boundaries of what falls within the meaning of participating in a Title VII investigation or proceeding. In Ghane v.

---

[3]The retaliation provision also contains an "opposition clause" which prohibits retaliation against an employee or applicant for employment because she "opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Brower has not argued that USPS violated this provision, and any such claim would fail on this record because there is no evidence that when she spoke to Smith she had a good faith belief that USPS had violated Title VII. See Evans v. Kansas City Sch. Dist., 65 F.3d 98, 100 (8th Cir. 1995).

West, 148 F.3d 979, 982 (8th Cir. 1998), we determined that because the plaintiff had never "filed an EEOC complaint or formally complained to any of his superiors about illegal discrimination," his only potential basis for a retaliation claim was his position on the employer's EEO committee. The requirement that the plaintiff have engaged in protected conduct has been phrased in various ways; see, e.g., Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997) (first prong met if plaintiff "filed a charge of discrimination"); Harris v. Secretary, U.S. Dep't of the Army, 119 F.3d 1313, 1318 (8th Cir. 1997) (standard met if plaintiff "complained of discrimination"). It is also required that the plaintiff have personally engaged in protected conduct. Smith v. Riceland Foods, Inc., 151 F.3d 813, 819 (8th Cir. 1998).

Other courts have considered the scope of protected activity in a variety of contexts. The Ninth Circuit concluded in Hashimoto v. Dalton, 118 F.3d 671, 679 (9th Cir. 1997), that a discussion with an EEO counselor was protected conduct where it led the counselor to believe a formal complaint would be filed and the counselor notified management officials accordingly. The issue has also been analyzed in terms of whether the conduct was "an intimately related and integral step in the process of making a formal charge." Croushorn v. Board of Trustees of Univ. of Tenn, 518 F.Supp 9, 23 (M.D. Tenn. 1980). The underlying charge need not be meritorious for related activity to be protected under the participation clause. Filipovic v. K&R Express Sys., Inc., 1999 WL 250312, *7 (7th Cir. 1999); Wyatt v. Boston, 35 F.3d 13, 15 (1st Cir. 1994) (citations omitted). Nevertheless, the complaint which allegedly led to the retaliation must have related to conduct protected under Title VII. See, e.g., Watts v. Kroger Co., 170 F.3d 505, 511 (5th Cir. 1999) (informal complaint not protected because plaintiff did not report or allege any sexual harassment).

The participation clause is designed to ensure that Title VII protections are not undermined by retaliation against employees who use the Title VII process to protect their rights. See, e.g., Hashimoto, 118 F.3d at 680. Retaliation may have a chilling

6

effect regardless of whether an employer acts after a formal complaint has been filed or after it knows one is to be filed. Not all discussions with individuals who are part of the Title VII grievance process or all informal complaints will amount to participation in a Title VII proceeding, however. At a minimum there would have to be factual allegations of discrimination against a member of a protected group and the beginning of a proceeding or investigation under Title VII. See Ghane, 148 F.3d at 982.

In this case it is not necessary to define the precise point at which a Title VII proceeding or investigation begins. The parties agree that Brower went to visit an EEO counselor on April 9, 1996 and that during her telephone conversation with Smith on the next day she threatened to bring a civil suit. Brower testified that one reason for her visit to the EEO counselor was to explore her EEO options, and Smith testified that Brower had mentioned to her something about going to the EEO or an attorney. It is undisputed, however, that in neither conversation did Brower complain of illegal discrimination or imply that she had been treated unfairly because of her race, color, religion, sex, or national origin. The EEO counselor did not take action in response to her visit or notify her supervisors of potential discrimination claims, and Brower's mention to Smith of a possibility of a civil suit was not linked to any discussion of discrimination. This record in insufficient to show that Brower participated in a proceeding or investigation under Title VII.

Brower also did not produce sufficient evidence to support an inference that her visit to the EEO office was causally connected to the termination of her contract. An inference of retaliatory motive may be supported by evidence that the defendant was aware of protected activity and that the date of the adverse employment action closely followed such activity. Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir.1992); Keys v. Lutheran Family and Children's Services, 668 F.2d 356, 358 (8th Cir. 1981). But see Nelson v. J.C. Penny Co., 75 F.3d 343, 346-47 (8th Cir. 1996) (in light of all the circumstances temporal proximity found insufficient to

establish causal connection). Although Brower's contract employment was terminated two days after her visit to the EEO counselor, the record does not contain any evidence that Smith, Brown, Matuzek, or any other USPS official knew about her conversation with the USPS EEO officer. The transcript of Brower's telephone conversation with Smith does not include any references to the EEO, and there is no evidence that the EEO counselor contacted any USPS officials regarding Brower's visit. Brower has failed to offer evidence sufficient to support a finding of a causal connection between this visit and the subsequent adverse employment action. Smith, 151 F.3d at 818-19.

B.

Runyon also argues that because Brower's Title VII retaliation claim is based on her status as an applicant for employment in the St. Louis office,[4] the termination of her contract employment is not sufficiently related to her claim to be cognizable as an adverse employment action. Brower argues that she should be able to recover for an adverse action not directly related to her application for employment because employees can sometimes recover under Title VII for adverse actions taken after they leave employment. She cites Robinson v. Shell Oil Co., 519 U.S. 337 (1997), in support, but in that case the adverse employment action (providing a poor reference) was still related to the employer-employee relationship. In contrast, Brower is complaining that her contractual relationship with USPS was ended after she unsuccessfully applied for a totally different position within USPS. She never alleged that she was in any way retaliated against in that application process or that the conditions of her contract employment violated any provision of Title VII. This element of her claim was also inadequate.

_____

[4]There may be an issue as to whether Brower was in fact an applicant for the level 23 position, but that issue need not be addressed in light of the other aspects of the case.

8

C.


Brower has not made out a prima facie case for retaliatory discrimination under Title VII. The evidence presented failed to establish that she participated in a protected activity, that there was a causal connection between any protected activity and an adverse employment action, or that the termination of her contract employment was cognizable as an adverse employment action. The district court did therefore not err in granting summary judgment, and the judgment is affirmed.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.