**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 8 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MOHAMMAD M. SHINWARI,

     Plaintiff - Appellant,

v.

RAYTHEON AIRCRAFT
COMPANY,

     Defendant - Appellee.

No. 98-3324
(D.C. No. 97-CV-2617)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **PORFILIO** and **LUCERO**, Circuit Judges.

This employment case involves the termination of an aircraft engineer,

allegedly in retaliation for activity protected by Title VII of the Civil Rights Act,

42 U.S.C. § 2000e-3(a), and the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 623(d). Appellant Mohammad Munir Shinwari appeals

the district court's grant of summary judgment in favor of his former employer,

defendant Raytheon Aircraft Company. This case requires us to examine the

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

activities protected by the participation and opposition clauses of the anti-retaliation provisions of those statutes. Additionally, it requires us to consider, as in so many employment discrimination cases, the sufficiency of plaintiff's evidence of pretext in the employer's non-discriminatory reason for taking adverse action. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

**I**

Plaintiff Shinwari is a "caucasian" male of Pakistani national origin. He was approximately fifty years old at the time of the relevant events. He was hired as a Senior Engineer by defendant Raytheon in early 1994, at a somewhat lower salary than the mid-point for engineers of his job grade. After first coming to Raytheon, Shinwari worked with Richard Gaines, who was involved in the decision to hire him, for between six months and one year. Shinwari received three annual performance review ratings—1994 (from Gaines), 1995, and 1996—of overall "fully competent." (II Appellant's App. Tabs 3, 5, 7; III Appellant's App., Gaines Dep. at 14-15.)

In late 1995, Shinwari was transferred to a new aircraft program, the "Hawker Horizon" program, based on his qualifications and a recommendation from Gaines. (III Appellant's App., Arnold Dep. at 1-3, 21-23.) The Hawker Horizon group was directed by Sam Bruner, and Shinwari reported to Bruner's

subordinate, Eddy Arnold, from November 1995 through mid-1996. In June 1996, Gaines was transferred into the Hawker Horizon program and some time thereafter again became Shinwari's supervisor.

Raytheon presented evidence of several alleged objective errors in Shinwari's work. Gaines described one incident wherein Shinwari selected a non-standard part for an admittedly minor detail in a proposed engineering drawing, and then refused to change the proposal after Gaines instructed him to use a more common part. Another incident involved alleged calculation errors by Shinwari, during early 1996, regarding an ice protection system. Derek Rounds, an engineer who had come from England along with the Hawker aircraft program, found errors, including inaccurate assumptions, in Shinwari's calculations; Gaines's evaluation confirmed the inaccuracies. According to Gaines, Shinwari denied making errors. Shinwari in his deposition continued to maintain there were no errors in the calculations and claimed that another employee, Ted Seely, agreed that there were no problems. The record contains no affidavit or deposition testimony by Seely.

Arnold, Shinwari's supervisor in the Hawker program, gave him an overall "fully competent" rating in his September 1996 annual performance review, noting, however, that Shinwari had difficulty accepting criticism and needed to

exercise greater care in reducing errors. Arnold stated that he added the comment regarding error reduction at the behest of Bruner.

Shinwari was dissatisfied with this review and complained, in late September 1996, to Nita Long, Raytheon's Director of Personnel Relations in Employment, alleging the review was inaccurate and discriminatory, but not alleging specific instances of discrimination. Long was in charge of Equal Employment Opportunity ("EEO") programs for Raytheon.

Around this time, Gaines and Shinwari began having increased difficulty with one another, with Gaines complaining to Arnold of Shinwari's "arrogant incompetence," (III Appellant's App., Arnold Dep. at 54-55,) and Shinwari protesting the appointment of Gaines as lead supervisor of their engineering team without his (Shinwari's) prior notification.

The situation apparently worsened in October of 1996, after Gaines become Shinwari's immediate supervisor. Raytheon employees describe at least two incidents of errors or inappropriate conduct by Shinwari during this period. In one, Shinwari sent a memorandum to senior managers describing how one aircraft system should be configured, without sending it to his immediate supervisors, Gaines and Art Kavie. According to Kavie, this led the managers to conclude, erroneously, that the memorandum contained the views of his entire group, rather

than Shinwari's proposals, which were directly contrary to Gaines's instructions to him.

Another October 1996 incident involved a proposed specification to be sent to suppliers regarding a pressurization control system. According to Gaines, Shinwari's work on this project was patently deficient, yet Shinwari refused to revise it at his request. Shinwari denies that his work product was in any way incorrect.

Following the September 1996 performance review and these incidents, Long and Shinwari met on October 23, 1996. Shinwari stated in his deposition that "I told Nita Long that the performance review that I have gotten are biased, and I see quite a bit of discrimination." (III Appellant's App., Shinwari Dep. at 468.) He does not indicate whether he alleged the basis—age, national origin, or otherwise—of this perceived discrimination. Long denies that Shinwari made any allegation of age or national origin discrimination at their meeting.

At the request of both Shinwari and his supervisors, Long set up meetings between them to attempt to resolve the conflict. Shinwari states that on November 15, 1996, at one such meeting with Long, Arnold, and Bruner, he complained, verbally, of "bias and discrimination," in protesting his performance

evaluation. (III Appellant's App., Shinwari Dep. at 611.)[1]  At the second of the two meetings later that same day, Shinwari's supervisors issued him a "special" performance review rating him unsatisfactory in almost all categories.  Shinwari refused to sign the review and responded that the review was unjustified and based on discrimination as well as in retaliation for his opposition to the September review and alleged earlier complaints of discrimination.  After the meeting, conflict between Shinwari and Gaines continued.

At a November 27, 1996, meeting, Shinwari responded in writing to his special performance review, disagreeing with all the particulars.  He also attached a note to Long's copy of this memorandum, stating that "I believe that the Special Review was done in retaliation for my having met with you and raised complaints," and specifying that he had begun to believe the review was motivated by age and national origin discrimination, although he "[did] not have any proof."  (II Appellant's App. at 15.)  According to Long, she did not show this attachment to anyone, nor investigate further Shinwari's allegations, because it was clear to her he was simply "looking for a way around the fact that his performance was unsatisfactory."  (III Appellant's App., Long Dep. at 344.)

---

[1]  Shinwari, in his deposition, did not specify the type of discrimination to which he referred.

Problems in Shinwari's work continued, including, according to Gaines, handwritten and poor-quality work, and failure to take direction. In December 1996, Shinwari received a comparatively small merit pay increase; on January 13, 1997, he e-mailed Long with further complaints, stating that "I strongly believe that I am, on a regular basis, discriminated against, because of my age and other background." (II Appellant's App. at 23.)

In mid-January, after Shinwari's supervisors informed Long that problems with Shinwari continued and they wanted him transferred, no other supervisors were willing to accept him. On or around January 17, Art Kavie, director of the Hawker design group, decided to terminate Shinwari, with the approval of Bruner. Raytheon offered him the choice of resignation or involuntary termination. Shinwari chose the latter, complained to the EEOC, and eventually sued, alleging age and national origin discrimination and retaliation. Prior to summary judgment, he dropped the discrimination claims, leaving only his retaliation claims for resolution by the court.

The district court granted summary judgment in favor of Raytheon on both of Shinwari's retaliation claims. As for the ADEA retaliation claims, it found no prima facie case of retaliation because Shinwari lacked a reasonable belief age discrimination had occurred, and that even if he made a prima facie case, he failed to rebut Raytheon's neutral reasons for termination. On the Title VII

retaliation claims, the court found an absence of pretext evidence and granted summary judgment to Raytheon on that ground.

## II

Considering this appeal from an award of summary judgment, we employ our customary standard of review:

> We review a grant of a motion for summary judgment de novo, applying the same legal standard used by the district court. See Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). We view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. See Byers, 150 F.3d at 1274.

McGarry v. Board of County Comm'rs, 175 F.3d 1193, 1198 (10th Cir. 1999).

Both Title VII and the ADEA, in similar language, make it unlawful to retaliate against an employee for engaging in certain protected activities. See 42 U.S.C. § 2000e-3(a) (Title VII); 29 U.S.C. § 623(d) (ADEA).

"Title VII retaliation claims generally proceed under the McDonnell Douglas burden-shifting analysis." McGarry, 175 F.3d at 1201 (citing Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir. 1993)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The same standard applies to ADEA retaliation claims. See Anderson v. Phillips Petroleum Co., 861 F.2d 631, 634 (10th Cir. 1988); see also Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993)

(clarifying the showing of intent required to prove discrimination).  The familiar McDonnell Douglas framework consists of plaintiff's prima facie case, defendant's neutral reason for its action, and plaintiff's rebuttal of the neutral reason by means of pretext evidence.  See, e.g., Butler v. City of Prairie Village, 172 F.3d 736, 747-48 (10th Cir. 1999).  We therefore examine in turn each aspect of this analysis of circumstantial evidence of retaliatory motive.

## A.  Prima Facie Case

The district court found Shinwari had failed to establish a prima facie case of retaliation under the ADEA, although it found Raytheon had failed to carry its summary judgment burden as to Shinwari's prima facie case of Title VII national origin retaliation.  To establish a prima facie case of retaliation under either statute, a plaintiff "must show: (1) that he engaged in protected opposition to discrimination; (2) adverse action by [defendant] subject to the protected activity; and (3) a causal connection between [plaintiff's] protected opposition and the adverse action."  McGarry, 175 F.3d at 1201 (citing Griffith v. Colorado, 17 F.3d 1323, 1331 (10th Cir. 1994); Archuleta v. Colorado Dep't of Insts., 936 F.2d 483, 486 (10th Cir. 1991)).

1. Protected opposition

    a. Participation

Title VII establishes two categories of protected activity: participation and opposition. See 42 U.S.C. § 2000e-3(a) (prohibiting retaliation because an employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"). Because the retaliation provision of the ADEA, 29 U.S.C. § 623(d), is identical in all material respects to the retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), we readily discern congressional intent to approach the two provisions in an identical manner. See 8 Lex K. Larson, Employment Discrimination, § 129.01, at 129-1 to 129-2 & n.2 (2d ed. 1999).

The participation clauses prohibit an employer from retaliating "against an employee or applicant for employment because she 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" Brower v. Runyon, 178 F.3d 1002, 1005 (8th Cir. 1999) (quoting 42 U.S.C. § 2000e-3(a)) (emphasis omitted). "Conduct is only protected, however, if it qualifies as participation 'in any manner' in a Title VII 'investigation, proceeding, or hearing.'" Id. (quoting 42 U.S.C. § 2000e-3(a)). "The participation clause is designed to ensure that Title VII protections are not undermined by retaliation against employees who use the Title VII process to protect their rights." Id. at 1006 (citing Hashimoto v. Dalton, 118 F.3d 671, 680

-10-

(9th Cir. 1997)).  Because of this purpose, "[a] plaintiff may maintain an action for retaliation based on participation in a protected proceeding regardless of whether the conduct forming the basis of her underlying complaint is adjudged to violate Title VII."  Jeffries v. Kansas, 147 F.3d 1220, 1231 (10th Cir. 1998) (citing Archuleta, 936 F.2d at 487; Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994)).  As noted above, the same analysis applies with respect to claims under the anti-retaliation clauses of the ADEA, 29 U.S.C. § 623(d).

Shinwari argues that his internal complaints within the company are protected under the participation prong of the retaliation provision.  This argument is without merit.  Complaints to management, even informally, can under some circumstances be sufficient to invoke the participation clause.  See Jeffries, 147 F.3d at 1231 & n.9.  The facts of this case, however, fall far short of those in Jeffries.  There, the plaintiff delivered a letter to the superintendent of her employer hospital describing acts of sexual harassment, a letter the hospital treated as a formal complaint and assigned EEO representatives to address.  See id. at 1226.  Here, Shinwari's allegations of discrimination were simply conclusory statements offered against his own performance review, without sufficient detail for the company or the EEOC to know what to investigate.  The Eighth Circuit has held that

> [n]ot all discussions with individuals who are part of the Title VII grievance process or all informal complaints will amount to

-11-

participation in a Title VII proceeding, however.  At a minimum there would have to be factual allegations of discrimination against a member of a protected group and the beginning of a proceeding or investigation under Title VII.

Brower, 178 F.3d at 1006 (citing Ghane v. West, 148 F.3d 979, 982 (8th Cir. 1998)).  We reject the contention that the fact that no investigation ensued will always automatically defeat application of the participation clause, because serious problems would undoubtedly arise if an EEO counselor declined to investigate claims that, unlike Shinwari's, included specific factual allegations. We decline, however, to extend the Title VII and ADEA participation clauses to include generalized and cursory complaints, unsupported by specific factual allegations, to an employer when those cursory complaints are neither related to, nor would reasonably lead to a proceeding provided for by statute.

b.  Opposition

"The [Title VII] retaliation provision also contains an 'opposition clause' which prohibits retaliation against an employee or applicant for employment because she 'opposed any practice made an unlawful employment practice by this subchapter.'" Brower, 178 F.3d at 1005 n.3 (quoting 42 U.S.C. § 2000e-3(a)). As previously noted, we apply a similar analysis to ADEA retaliation claims.

Because the record before us could support a conclusion that Shinwari engaged in opposition to alleged discrimination, but not that he participated in proceedings under the relevant statutes, he must therefore show that his

-12-

opposition was to at least a perceived practice prohibited by either Title VII or the ADEA. We have held that "opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated." Love v. RE/MAX of Am., Inc., 738 F.2d 383, 385 (10th Cir. 1984) (citations omitted).

The district court mischaracterized our standard when it stated that the belief that antidiscrimination law has been violated must not only be subjectively in good faith but objectively reasonable, citing Eleventh Circuit authority. See Little v. United Techs., 103 F.3d 956, 960 (11th Cir. 1997). However, our Circuit's standard requires only a subjectively good faith belief. See Jeffries, 147 F.3d at 1231; Love, 738 F.2d at 385; see generally 2 Larson, Employment Discrimination, § 34.03[2], at 34-36 to 34-41 and nn.54-60 (noting that the First and Tenth Circuits have adopted a good faith belief test, by contrast to the Eleventh Circuit's reasonableness test, and only the Second and Seventh Circuits require both good faith and reasonableness). Under Love, 738 F.2d at 385, the only question in determining whether Shinwari's complaints of discrimination constituted protected opposition is whether those complaints were made in good faith.

Raytheon offers considerable evidence of older and Pakistani employees being reviewed and paid well to rebut Shinwari's ultimately abandoned discrimination claims, undermining the objective reasonableness of those claims.

Shinwari points to several instances, however, apart from his own adverse evaluations and alleged under-compensation, which he maintains led him to develop a good faith belief in both age and national origin discrimination. These were:

> (1) plaintiff's belief that his 1996 performance evaluation reflected bias toward older employees; (2) Arnold's comment about plaintiff's salary; (3) the fact that "there was one time" when Arnold did not let plaintiff, Seely or Davidson participate in a presentation to "very upper management;" (4) plaintiff's belief that Seely, Davidson, Ungezene and other unidentified over-40 engineers had been demoted or relieved of leadership responsibilities; (5) the fact that Raytheon selected Gaines, rather than plaintiff, as lead engineer on the environmental control system team; and (6) a conversation where Seely told plaintiff that he was not happy with his performance evaluation.

(I Appellant's App. Doc. 3 at 22.)

Review of the record reveals that Shinwari's allegations of discrimination are generally vague, conclusory, and unsupported by specific factual instances. Nevertheless, there are claims which arguably could support a good-faith, albeit mistaken, belief that Raytheon was engaged in age discrimination. Specifically, he points to responsibility being taken away from a fifty-seven-year-old employee, Ted Seely, and to one instance when Arnold announced he was going to give the opportunity to make a presentation to "the younger leads." (III Appellant's App., Shinwari Dep. at 445.) Although Raytheon points to facts indicating that these instances were not discriminatory, its arguments are not so

-14-

patently obvious as to persuade us that no reasonable fact-finder could consider Shinwari's alleged belief to have been in good faith. We note, however, that all Shinwari's cited instances pertain to alleged age, and not national origin, discrimination. The district court nevertheless found in favor of Shinwari as to protected activity under Title VII, based on Raytheon's failure to address facts specific to his Title VII retaliation claim. Because Raytheon's Title VII argument on appeal is likewise restricted to the issue of pretext, and because we agree with the district court on the dispositive question of pretext, we do not disturb the lower court's conclusion that Raytheon failed to carry its burden as summary judgment movant on this point.

2. Adverse Action

Raytheon concedes that Shinwari's termination qualifies as an adverse action for the purposes of establishing a prima facie case of unlawful retaliation.

3. Causation

To develop a prima facie case of retaliation, a plaintiff must show not only protected activity and adverse action, but also a causal relationship between the two. "The requisite causal connection may be shown by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" McGarry, 175 F.3d at 1201 (quoting Burrus v. United Tel. Co. of Kan., 683 F.2d 339, 343 (10th Cir. 1982)).

"Unless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation." Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997). The district court properly found sufficient temporal proximity to establish an inference of causation, but found that inference refuted by of lack of evidence of knowledge of Shinwari's complaint by the relevant decision-makers. While it is apparent that protected activity cannot bear a causal relationship to adverse action if those taking the action were unaware of the existence of the protected action, we disagree with the district court's conclusion that the summary judgment materials cannot support an inference of such awareness.

The district court's conclusion that Raytheon had refuted causation, in the context Shinwari's ADEA claim, by showing a lack of knowledge on the part of the relevant decision-makers relied in part on deponent Bruner's retraction of his deposition testimony in a correction, as noted in the district court's order at 17 n.19. During his deposition, Bruner stated that "[a]t some point in time we received a document from Mohammad stating that he had been—he felt he had been discriminated against." (III Appellant's App., Bruner Dep. at 135.) At that point, Shinwari's counsel handed Bruner a copy of Shinwari's January 13, 1997, e-mail to Long, which alleged "I strongly believe that I am . . . discriminated

against, because of my age and other background." ( II Appellant's App. at 22-23). Bruner stated that "[y]es, this is the one I am talking about," and explained that he probably discussed it with Kavie, Gaines, and Arnold. (III Appellant's App., Bruner Dep. at 135.) When asked "when that conversation took place," he responded "probably . . . the day this came out, because this is the sort of thing that would probably generate some response among the recipients." ( Id. at 136.) When asked how he got a document addressed only to Long, he replied "[m]aybe Nita gave me a copy, I don't know, but I got a copy." ( Id.) This deposition testimony, viewed in the light most favorable to Shinwari, supports an inference that Bruner received the note from Long—and discussed it with Gaines, Kavie, and Arnold—around January 13, 1997, although Long denies having given it to anyone until the EEOC investigation.

In his deposition corrections, Bruner changed the answer to the question regarding when he saw the January 13, 1997, e-mail to Long to read "[w]e had that conversation during the time we were preparing for the interviews with the EEOC investigator." (I Appellee's Supp. App. at 161.) The district court relied on this correction to conclude that no one other than Long—i.e. no decision-makers with respect to Shinwari—saw the January 13, 1997, e-mail until after Shinwari's termination.

Shinwari argues, however, that Fed R. Civ. P. 30(e), permitting deposition corrections, does not render previous testimony inadmissible, citing Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 103 (2d Cir. 1997). This is the appropriate rule, particularly when a deponent attempts to use correction to eliminate a substantively harmful statement, rather than to correct problems such as transcription errors. Under such circumstances, "[t]he original answer to the deposition questions will remain part of the record and can be read at the trial." Id. (citations omitted). The possibility of impeachment of Bruner with his original testimony, therefore, would appear to create at least a dispute of material fact as to knowledge of the January 13 e-mail on the part of Bruner, and—viewing the evidence in the light most favorable to Shinwari—Gaines, Kavie, and Arnold as well.

The January 13, 1997, e-mail, refers clearly to alleged age discrimination, but also mentions discrimination because of Shinwari's "other background." (II Appellant's App. at 23.) As to Shinwari's November 27, 1996, note to Long, specifically mentioning national origin discrimination, Long denies its circulation to anyone else prior to Shinwari's termination. Bruner's testimony is that he cannot recall when he first saw that document, that is, "whether [it] was before or after Mr. Shinwari's termination." (III Appellant's App., Bruner Dep. at 137.) Additionally, although Shinwari's deposition testimony is vague on the point, it

creates a factual dispute as to whether he made oral allegations of some type of discrimination at the November 15, 1996, meeting with Long, Arnold, and Bruner. Viewing all this evidence in the light most favorable to Shinwari, we conclude it could support an inference of knowledge and therefore causation as to claims of both age and national origin discrimination.

Therefore, we conclude that "for purposes of summary judgment, the[] evidence and the reasonable inferences drawn therefrom, together with the close temporal relationship" between Shinwari's complaints of discrimination and his termination, "demonstrate that [Shinwari] has met his burden of establishing a prima facie case of retaliation." McGarry, 175 F.3d at 1201 (citing Candelaria v. EG & G Energy Measurements, Inc., 33 F.3d 1259, 1261-62 (10th Cir. 1994)).

**B. Defendant's Neutral Reason**

"As with discrimination claims, once the plaintiff has established a prima facie case of retaliation, the employer has the burden of coming forth with a legitimate, nondiscriminatory reason for its adverse action." Butler, 172 F.3d at 752 (citing Sauers, 1 F.3d at 1128). Once Shinwari established his prima facie case of retaliation, the burden shifted to Raytheon to show a legitimate reason for his termination. See McGarry, 175 F.3d at 1201. Raytheon has met this burden. Although Shinwari raises factual disputes over specifics, given the nature of the employer's burden at this stage, there is enough uncontroverted evidence of

-19-

perceived deficient performance to require pretext evidence.

## C. Pretext

Once the defendant presents evidence of a neutral reason, "even though a plaintiff has established a prima facie case, the defendant is entitled to summary judgment unless the plaintiff produces either direct evidence of discrimination or evidence that the defendant's proffered reason for the action taken was pretextual." Conner, 121 F.3d at 1397. Following presentation of evidence of the defendant's neutral reason, "'the presumption of [impermissible motive] simply drops out of the picture,'" and the analysis shifts to the plaintiff's ultimate burden of showing that the defendant took action on an illegal basis—in this case, retaliation for protected activity. Id. at 1396 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993)). The plaintiff may then resist summary judgment if she can present evidence that the proffered reason was pretextual, "i.e. unworthy of belief," Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995), or "otherwise introduces direct evidence of illegal . . . motive," id. at 453. "Effective cross-examination, combined with the plaintiff's initial evidence, may be sufficient to effect this task." Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1103 (10th Cir. 1998) (citations omitted); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981). "To avoid summary judgment, a plaintiff need not demonstrate that [impermissible] reasons

motivated the employer's decision." Morgan v. Hilti, Inc. , 108 F.3d 1319, 1321-22 (10th Cir. 1997) (citation omitted). Rather, he or she must simply point to facts that could lead a reasonable jury to disbelieve the employer's proffered reason. See Butler , 172 F.3d at 750-51.

Allegations of retaliation do not relieve a plaintiff of this burden, which can be met either by direct evidence of retaliatory motive or by showing that the employer's reasons were pretextual. See Conner , 121 F.3d at 1396-97. Temporal proximity between protected activity and adverse action may combine with additional circumstantial evidence to create a fact issue as to pretext. See Butler , 172 F.3d at 752. This is not the case here, because Shinwari points to virtually no additional evidence, resting principally on his prima facie case. Shinwari's argument on this point was rejected in Conner , 121 F.3d at 1397-98. [2] As noted in the unpublished case of Trujillo-Cummings v. Public Serv. Co. , No. 97-2337, 1999 WL 169336, at **3 (10th Cir. March 29, 1999):

> The fact that temporal proximity may support an inference of causation sufficient to establish a plaintiff's prima facie case does not automatically demonstrate that a defendant's proffered justifications are pretextual. While a discharge is retaliatory if "the

---

[2] We recognize that our discussion of retaliation in Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir. 1996), which did not examine in detail the McDonnell Douglas framework, has led litigants to contend that case stands for the proposition that a prima facie case, in the retaliation context, necessarily also establishes pretext. However, the court in Conner, 121 F.3d at 1398, specifically rejected such a reading of Marx.

immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights," <u>Martin v. Gingerbread House, Inc.</u>, 977 F.2d 1405, 1408 (10th Cir. 1992) (citations and footnote omitted), appellant confuses the inference of causation sufficient to establish a prima facie case of [retaliation] with her ultimate burden of proving that the protected action was indeed the cause of the discharge. Once the employer meets the second step of <u>McDonnell Douglas</u>, the inference of causation drops out, and a plaintiff does not carry his or her burden until he or she offers some evidence of pretext in the employer's legitimate reason. <u>See</u> <u>Conner</u>, 121 F.3d at [1398] (refusing to read <u>Marx</u> as "holding that protected conduct closely followed by adverse action always justifies an inference of retaliatory motive, and thus summary judgment is always inappropriate when temporal proximity is established").

In his reply brief, Shinwari relies on <u>Butler</u>'s holding that, in certain cases, temporal proximity between protected activity and adverse action may be insufficient to create an inference of retaliatory motive, but with additional evidence may nevertheless create a fact issue as to pretext. <u>See</u> <u>Butler</u>, 172 F.3d at 752. He argues that <u>Butler</u> allows him to rest his pretext argument entirely on the temporal proximity evidence here <u>sufficient</u> to establish the causation prong of the prima facie case. In <u>Butler</u>, however, "additional circumstantial evidence," of pretext was present. <u>Id.</u> In that case, the proffered neutral justification for the plaintiff's termination was that his position was eliminated pursuant to a reorganization. Evidence of pretext included resurrection of the plaintiff's former duties in a new position and the fact that his was the only position eliminated while it was occupied. <u>See id.</u> These facts represented substantial circumstantial evidence of pretext, making temporal proximity merely an additional factor and

-22-

not a complete substitute for pretext evidence.    See id.  Shinwari does not offer such evidence suggesting that his adverse evaluations and termination were pretextual, apart from their temporal proximity to his alleged complaints.  If this were enough, the burden-shifting scheme of    McDonnell Douglas   would be effectively eliminated in retaliation cases, and this Circuit has already rejected such an approach.   See Conner , 121 F.3d at 1398.

Shinwari's reliance, in his reply brief, on    McGarry , 175 F.3d at 1200-02, is likewise misplaced.  That case, like    Butler , involved additional evidence of pretext apart from temporal proximity alone—notably the employer's failure to keep the plaintiff's application on file and reconsider it for a new opening following a specific promise to do so.   See id. at 1202.

Shinwari contends that he did present "additional circumstantial evidence" of pretext,  Butler , 172 F.3d at 752: namely, the sudden drop in his job evaluations and the credibility issue created by Bruner's subsequent retraction of deposition testimony.  Although Shinwari's evaluations did drop precipitously between his September 1996 annual evaluation and his special performance review only a few months later, Raytheon cites to extensive and unrefuted record evidence supporting such a re-evaluation.  Moreover, the comments on Shinwari's September 1996 regular review regarding errors and sensitivity to criticism reveal that Arnold and Bruner were aware that problems of careless work and difficulty

in dealing with criticism were ongoing—problems that are consistent with those identified in the special performance review.

More importantly, Shinwari has produced no evidence that Raytheon's explanation of the underlying cause of the abrupt drop in performance evaluation lacks credibility. Indeed, while he maintains that there are factual disputes as to the errors and instances of insubordination at issue, review of the record reveals that the only dispute arises from Shinwari's subjective evaluations of his own performance. While Shinwari's deposition is replete with broad contentions such as one that anyone in the aircraft industry would confirm that he is one of the finest engineers in that industry, such confirmation is conspicuously absent from the record—as is any affidavit or deposition testimony by anyone other than Shinwari himself confirming that his calculations were correct or his behavior acceptable. Highly generalized and self-serving evaluations of one's own performance are not sufficient to create a genuine issue of material fact as to the sincerity, as opposed to the correctness, of an employer's negative performance evaluation. See, e.g. , Fallis v. Kerr-McGee Corp. , 944 F.2d 743, 747 (10th Cir. 1991) (holding that "a plaintiff cannot prevail by merely challenging in general terms the accuracy of a performance evaluation which the employer relied on in making an employment decision without any additional evidence (over and above

that of the prima facie case)" (citing Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir.1988)).

The more difficult question, in our view, is whether Bruner's amendment of his deposition testimony regarding his receipt of Shinwari's January 13, 1997, e-mail alleging discrimination might suffice to call into question the sincerity of Raytheon's professed motive for terminating Shinwari. Viewing the evidence in the light most favorable to Shinwari, we conclude that cross-examination of Bruner as to the discrepancy between his initial statement and the later correction could lead to an inference that he was seeking to conceal his knowledge of Shinwari's complaint of discrimination. As discussed above, such an inference supports the causation element of Shinwari's prima facie case, but we are not persuaded that this fact alone suffices to carry the day on the question of pretext. Viewing the entirety of the evidence in context, we conclude that this single isolated inconsistency is not sufficient to undermine the sincerity of Raytheon's professed motive for taking adverse action, particularly as the inconsistency at issue is not immediately related to that professed motive, and does nothing to undermine the allegations of deficient performance by Shinwari's other supervisors, whose credibility is not similarly undermined. Such a view is bolstered by the fact that not Bruner, but rather Kavie, participated in the initial decision to terminate Shinwari. In short, taking the facts in the light most

favorable to Shinwari, even if Bruner was aware of Shinwari's January 13, 1997, e-mail but tried to conceal that awareness, in the context of the totality of the facts in the record before us, that single fact is not sufficiently material to the specific reasons proffered for Shinwari's termination to establish pretext without some additional evidence thereof.

Shinwari relies on Dey v. Colt Construction & Development Co., 28 F.3d 1446, 1460-61 (7th Cir. 1994), for the proposition that this inconsistency constitutes sufficient evidence of pretext to prevent summary judgment. (See Appellant's Br. at 25.) In Dey, however, the court found evidence sufficient to support an inference of pretext based on specific refutations of particular instances of alleged misconduct, corroborated by the testimony of co-workers. See id. Here, Shinwari, unlike Dey, denies none of the incidents cited by Raytheon as grounds for his termination, but simply maintains, without corroboration, that he was in the right in each of them. The only "denials of knowledge of a complaint," (Appellant's Br. at 25,) at issue in the pretext analysis in Dey were denials by a supervisor that other employees had complained to him about alleged deficiencies in the plaintiff's performance, and therefore that case simply does not affect the separate issue of whether a manager's denial of receipt of a discrimination complaint—called into question by inconsistent deposition testimony—automatically suffices in and of itself as

evidence of pretext in a retaliation case. The text of Dey cited by Shinwari, see 28 F.3d at 1459, deals with the distinct issue of the relevance of a disputed denial of receipt of a complaint to the question of whether an employer was aware of the protected activity. See id. at 1458-59. Therefore, we conclude that Dey is not applicable to the particular question before us.

While there certainly may be cases where a manager's rebutted denial of knowledge of an employee's complaint would be sufficient to question the sincerity of the manager's professed motives for terminating the employee, see Roberts, 149 F.3d at 1103, this is not such a case. As we have often stated, the pretext inquiry is highly fact-specific. See Conner, 121 F.3d at 1398. Based on review of the summary judgment materials before us, we conclude that the evidence of Shinwari's deficient performance is so overwhelming and unrefuted that the single inconsistency in Bruner's deposition testimony cannot suffice to carry Shinwari's burden of showing pretext at the summary judgment stage.

### III

The judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge