Linda **LOVE**, Plaintiff-Appellee,

v.

**RE/MAX OF AMERICA, INC.,**
**Defendant-Appellant.**

**No. 82–1576.**

United States Court of Appeals,
Tenth Circuit.

July 3, 1984.

Dan S. Cross, Denver, Colo. (Catherine M. Meyer, Denver, Colo., with him on the brief) of Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for defendant-appellant.

Leslie M. Lawson, Denver, Colo. (Lynn D. Feiger, Denver, Colo., with her on brief), for plaintiff-appellee.

Before McWILLIAMS, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Linda Love brought this action against RE/MAX of America, Inc. (RE/MAX) pursuant to 42 U.S.C. § 2000e *et seq.* (1982) (Title VII), and 29 U.S.C. § 201 *et seq.* (1982) (Fair Labor Standards Act) as modified by 29 U.S.C. § 206(d) (1982) (Equal Pay Act). Love alleged that RE/MAX violated Title VII by discriminating against her on the basis of sex, violated the Equal Pay Act by failing to give her equal pay for equal work, and retaliated against her in violation of both Title VII and the Fair Labor Standards Act. After a trial to the bench, the judge rendered an oral decision in which he determined that RE/MAX had not discriminated against Love or violated the Equal Pay Act with respect to her salary.[1] However, the court decided that Love's discharge by RE/MAX was retaliatory and directed an award of damages and attorneys fees. RE/MAX appeals and we affirm.

## I.

The claim of retaliatory discharge is based on the following undisputed facts. Love was hired by RE/MAX in February 1978 as director of advertising. She was named vice president for advertising in February 1979, but was not given a raise in pay until April 1979. During this time Love discovered that male vice presidents had received larger starting salaries than she. In December 1979, Love was told that her projects were unacceptably over budget, and that if she went over budget again she would be fired. Love agreed to keep costs down. In March 1980, Love learned that male employees of RE/MAX in positions she believed were comparable to hers had been given substantial raises the previous November although she had not. Love asked the company president, Gail Main, for a performance review and indicated her desire for a pay raise. She was told at the end of March that the company was not happy with her work and that she would not get a raise. On April 18, 1980, Love wrote a memo to the president requesting a raise. She attached a copy of the Equal Pay Act to the memo. Within two hours the chief executive officer of RE/MAX, Dave Liniger, went to her office with the memo and fired her.

The district court found that Love had made a legitimate good faith assertion of a statutory right by sending the memo and attaching to it a copy of the Equal Pay Act. The court held that Love was entitled to recover for retaliation because one of the dominant reasons for her discharge was the assertion of that statutory right. The court did not specify whether it found re-

---

1. Love does not challenge these rulings on appeal.

taliation under the Fair Labor Standards Act, Title VII, or both.

On appeal, RE/MAX contends that the claim of discriminatory retaliation should be analyzed exclusively under the Title VII standards set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and its progeny, and that the district court misapplied the *McDonnell Douglas* test. Love argues that the court's decision is sustainable if it is correct under the Fair Labor Standards Act. We need not resolve this dispute because in our view Love met the standards for proving retaliation under either Act.

## II.

Title VII provides in pertinent part:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... *because [the employee] has opposed any practice made an unlawful employment practice* by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

42 U.S.C. § 2000e–3(a) (emphasis added). This circuit applies to retaliation claims the approach to Title VII suits established in *McDonnell Douglas. See Burrus v. United Telephone Co.,* 683 F.2d 339 (10th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). In *Burrus* we held that the elements of a prima facie case of retaliation are: (1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's action. *Id.* at 343.

■ RE/MAX argues that under the language of the statute, opposition is not protected unless the conduct opposed is in fact unlawful. Given the district court's finding that RE/MAX did not discriminate against Love on the basis of sex, RE/MAX contends that Love's good faith belief was not legally sufficient to state a retaliation claim under the opposition clause. Every circuit that has considered the issue, however, has concluded that opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated. *See, e.g., Rucker v. Higher Educational Aids Board,* 669 F.2d 1179, 1182 (7th Cir.1982); *Sisco v. J.S. Alberici Construction Co.,* 655 F.2d 146, 150 (8th Cir. 1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1137–40 (5th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); *Parker v. Baltimore & Ohio Railroad Co.,* 652 F.2d 1012, 1019 (D.C.Cir.1981); *Monteiro v. Poole Silver Co.,* 615 F.2d 4, 8 (1st Cir.1980); *Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir.1978); *see also Mitchell v. Visser,* 529 F.Supp. 1034, 1043 (D.Kan. 1981). We agree that a good faith belief is sufficient.

RE/MAX also argues that the district court committed reversible error by improperly shifting to it the burden of proving the absence of retaliatory motive. As discussed in *Burrus,*

"If a prima facie case is established, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.... The defendant need not prove the 'absence of retaliatory motive, but only produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason.' ... If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff."

683 F.2d at 343 (citations omitted).

We are not persuaded that the district court misunderstood the nature of the burden of production that shifts to a defendant in a Title VII case. Indeed, after observing that the facts were very close on the disparate treatment claim, the court found the

evidence to be "inconclusive" and denied Love relief on that claim. *See* rec., vol. VII, at 7. We believe the court's resolution of the disparate treatment claim indicates that the judge properly placed on Love the overall burden of persuasion in the Title VII claims.

RE/MAX contends alternatively that the record does not support the trial court's decision. RE/MAX argues that Love did not present a prima facie case because the evidence does not establish that she asserted her rights in good faith or that a causal connection existed between her conduct and the employer's action. RE/MAX further argues that Love failed to rebut its legitimate business reasons with sufficient evidence of pretext.

■ Once the trial court declines to dismiss a Title VII claim for failure to make a prima facie case and the defendant proceeds to present evidence of a legitimate business reason, the court then must decide the ultimate fact issue—"which party's explanation of the employer's motivation it believes." *United States Postal Service Board of Governors v. Aikins*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). In some cases a "plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981).

In deciding that Love had asserted her rights in good faith, the trial court found that RE/MAX, and particularly Mr. Liniger, "would put up with more from men in the company than from women." Rec., vol. VII, at 6. The court further found that "the looseness and the lack of precision of managerial concepts has caused an atmosphere to exist in which any sensitive thinking woman would consider that there was discrimination," *id.* at 8, and that "she would see other vice-presidents and consider that she was sharing the same or even greater moments of pressure than they were and think that she should be paid

to the extent that they should." *Id.* The court found that Love's feeling of gender discrimination also was justified by "the churlish remarks that were made around the office." *Id.* at 10.

■ With respect to a causal connection between the protected activity and the adverse employment action, the evidence shows that Liniger fired Love within two hours of receiving her memo containing a raise request and a copy of the Equal Pay Act. "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus*, 683 F.2d at 343. Love demonstrated to the satisfaction of the trial court that the reasons offered by RE/MAX for her termination were unconvincing "afterthoughts," rec., vol. VII, at 2, and not worthy of belief.

We may set aside these determinations on appeal only if they are clearly erroneous. Fed.R.Civ.P. 52(a); *see Aikins*, 103 S.Ct. at 1482–83.

"Findings are not to be determined clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made.... As an appellate court, it is not for us to determine whether the trial court reached the correct decision, but whether it reached a permissible one in light of the evidence. 'When a case is tried to the district court, the resolution of conflicting evidence and the determination of credibility are matters particularly within the province of the trial judge who heard and observed the demeanor of the witnesses.'"

*Higgins v. Oklahoma ex rel. Oklahoma Employment Security Commission*, 642 F.2d 1199, 1202 (10th Cir.1981) (citations omitted) (quoting *Dowell v. United States*, 553 F.2d 1233, 1235 (10th Cir.1977)). We have carefully reviewed the entire record and we are not left with a definite and firm conviction that a mistake has been made. The finding of unlawful retaliation by RE/MAX is sustainable under Title VII.

## III.

The retaliation holding is equally sustainable under the Fair Labor Standards Act. That Act, of which the Equal Pay Act is a part, provides that it shall be unlawful for any person

"to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee ...."

29 U.S.C. § 215(a)(3). In this section, Congress "sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced" by recognizing that "fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960).

When the "immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights, the discharge is discriminatory under § 215(a)(3) whether or not other grounds for discharge exist." *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 181 (8th Cir.1975); *see also Marshall v. Parking Co. of America-Denver,* 670 F.2d 141, 143 (10th Cir.1982) (citing *Maxey's Yamaha* with approval); *Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98, 103 (E.D.Tenn.1979). The section protects conduct based on a good faith, although unproven, belief that the employer's conduct is illegal. *See Maxey's Yamaha,* 513 F.2d at 181. The Act also applies to the unofficial assertion of rights through complaints at work. *Copper Cellar,* 476 F.Supp. at 103; *accord Parking Co.,* 670 F.2d at 142 (plaintiff fired for refusing to release his back pay claim); *Maxey's Yamaha,* 513 F.2d at 182 (plaintiff asserted right at work and was fired immediately). The trial court correctly analyzed the facts under the above legal standards in holding that Love's discharge was retaliatory.

In sum, we affirm the trial court's decision that Love was illegally discharged in retaliation for the good faith assertion of her statutory rights.