Maria M. McMILLIN, Plaintiff,

v.

FOODBRANDS SUPPLY CHAIN
SERVICES, INC.,
Defendant.

No. CIV.A.01–2598–GTV.

United States District Court,
D. Kansas.

July 21, 2003.

James E. Kunce, Overland Park, KS, for plaintiff.

Robert W. McKinley, Michael A. Williams, Lathrop & Gage L.C., Kansas City, MO, for defendants.

### MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff, Maria McMillian, brings this case alleging that Defendant, Foodbrands Supply Chain Services, Inc., violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") by failing to properly compensate her for overtime hours worked; violated the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA") by failing to compensate her at a rate equal to that received by similarly situated males; discriminated against her based on her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); retaliated against her in violation of the FLSA and Title VII for opposing the alleged unequal pay and discrimination she faced; and breached an oral contract of employment with Plaintiff. The case is before the court on Defendant's motion for summary judgment (Doc. 42). For the reasons set forth below, Defendant's motion is granted with respect to Plaintiff's Equal Pay Act and Title VII sex discrimination claims and denied with respect to all other claims.

### I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on the evidence submitted with the summary judgment papers and viewed in the light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

Defendant operates a warehouse business in Kansas where processed foods are received, assembled, and then shipped to

brokers and wholesale customers. In April 1998, Defendant hired Plaintiff as a billing clerk at an hourly rate of $9.50. As a billing clerk, Plaintiff was responsible for recording her own time and overtime on time sheets.

In January 1999, Defendant created the Samples Department, a new department responsible for providing samples of Defendant's food products to salespersons and brokers. Upon opening the department, Defendant promoted Plaintiff to the position of Samples Specialist, a non-exempt position under the FLSA. Plaintiff's new position required her to clock in and out of work on a computerized time clock rather than manually fill out time sheets. The time clock system recorded all hours, including overtime hours, worked by Plaintiff at the office. It did not, however, record any hours that she worked from home. She alleges that from September 1999 through May 2000, she worked—and was not compensated for—an average of twenty hours of overtime per week from home. Part of the overtime work she performed from home involved typing in names, addresses, and labels directly onto her home computer. The remainder of the work required her to access Defendant's computer network through a software program added to her home computer. Defendant's computer records establish that Plaintiff first accessed Defendant's network from home on December 27, 1999, and that she logged a total of 19 hours and 25 minutes on the network from that time through May 15, 2000. Plaintiff did not otherwise keep records of the overtime work she performed from home.

Plaintiff first inquired about being paid for her home-based overtime in January 2000. Her immediate supervisor at the time, Joe Segobia, informed her that she had been given home access to Defendant's computer network so that Defendant would not have to pay her overtime.

Plaintiff raised the subject with Mr. Segobia two or three more times and received the same response. She also spoke with Chris Chidester, Defendant's Director of Human Relations, about the issue. Mr. Chidester told Plaintiff that she should be paid for every hour she was working from home, and that she should contact Defendant's IT Department in Oklahoma City, Oklahoma to obtain her remote access computer records to determine how much overtime she had worked. Plaintiff contacted the IT Department and was informed that she needed to obtain permission from a supervisor before any computer records could be released. By the time she attempted to obtain that permission from Mr. Chidester, his employment had been terminated. Plaintiff did not ask Mr. Segobia for permission, and she never otherwise lodged a written request or complaint regarding the denial of overtime pay.

In May 2000, Defendant converted Plaintiff's Samples Specialist position into an exempt position under the FLSA. Following the conversion, Plaintiff earned a salary of $32,000 per year and was no longer eligible for overtime pay.

In January 2001, Jeff Jones, Defendant's Director of Operations, offered Plaintiff the opportunity to move to one of two open positions: Warehouse Administrative Supervisor or Back Dock Supervisor. The Warehouse Administrative Supervisor position involved supervision of approximately eleven clerical employees and required the supervisor to work in an office or cubicle for approximately ninety percent of the day. The Back Dock Supervisor position required that the individual spend ninety percent of the day supervising and assisting twenty to twenty-five warehouse employees in loading, unloading, moving, and rotating merchandise in refrigerated and frozen warehouses. At the time Mr. Jones offered Plaintiff the positions, he

informed her that the salaries were the same and were equal to the salaries being paid to other warehouse supervisors. Plaintiff accepted the Warehouse Administrative Supervisor position.

Plaintiff assumed responsibilities for the Warehouse Administrative Supervisor position in March 2001. Several months passed and Plaintiff had yet to receive the raise in salary promised by Mr. Jones. She confronted him about this on several occasions during the period from March to June of 2001, once directly asking him whether she was not receiving the raise because she was a woman and the company did not want to pay her the same as a man. She also specifically noted that she was the only female supervisor and was making significantly less money than the male supervisors.

On or about July 20, 2001, Plaintiff received a $1,600 per year pay increase, retroactive to March 15, 2001. The increase raised her salary to $34,100 per year, approximately $8,000 to $10,000 per year less than the salaries of the male warehouse supervisors. Plaintiff spoke with Mr. Jones and Steve Bryan, Defendant's Director of Human Resources, about her displeasure over the raise. She testified in deposition that she said the following to the two men: "I told [them] I was very unhappy and I would have to consider other means to receive gratification [or, in other words] ... have to seek other avenues to receive the compensation I had been promised." Eventually, Mr. Jones told Plaintiff that they needed to end the meeting and take some time to cool off. Shortly thereafter, Mr. Jones left for vacation.

On August 15, 2001, approximately one to two days following Mr. Jones's return from vacation, Defendant terminated Plaintiff's employment. Mr. Jones and Mr. Bryan both took part in the decision to discharge Plaintiff. Defendant alleges that it discharged Plaintiff because it decided to eliminate her Warehouse Administrative Supervisor position as a cost-cutting measure and had, in fact, been contemplating the elimination since June 2001. Specifically, Defendant contends that Plaintiff's position was not necessary because: (1) Tyson Foods, which bought out Foodbrands in June 2001, did not provide samples to sales people or brokers; (2) air freight was handled by Tyson's headquarters in Springdale, Arkansas; and (3) supervision of billing clerks was transferred to the inventory manager, Bruce Murphy. Aside from one other employee whose project was canceled, Plaintiff was the only employee terminated in the second half of the 2001 calendar year due to reorganization after the Tyson buy-out.

Plaintiff alleges that Defendant never informed her that the reason it was terminating her employment was because her position was being eliminated. Rather, she claims that Mr. Bryan informed her in the August 15, 2001 meeting that she was being discharged as a result of two "incidents" which had recently occurred. Those "incidents" involved: (1) an allegation that Plaintiff had spread gossip involving LaDonna Spies, a customer service coordinator; and (2) a meeting Plaintiff had with Jim Parise and Josh Rennas, the warehouse manager, in which Mr. Rennas accused Plaintiff of, and later wrote her up for, being uncooperative in a discussion about potential solutions to a problem they were experiencing at the warehouse. Plaintiff claims that Mr. Bryan had previously been informed that the incident involving Ms. Spies was not true, and that she told Mr. Bryan that the incident with Mr. Rennas was "totally bogus."

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Id.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* "Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party." *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 972 (10th Cir.1994) (citation omitted).

## III. DISCUSSION

### A. FLSA Overtime Claim

■ Plaintiff's first claim is for denial of overtime compensation in violation of the FLSA. In pertinent part, the FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate ·not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "To support such a claim, the plaintiff must show that she actually worked overtime, that the amount of overtime was shown by justifiable and reasonable inference, and the employer had actual or constructive knowledge of the overtime." *Slattery v. HCA Wesley Rehab. Hosp., Inc.*, 83 F.Supp.2d 1224, 1230 (D.Kan.2000).

■ Here, Plaintiff has presented evidence that she worked, at the very least, approximately twenty hours of overtime for which she was not compensated. She has also presented evidence that at least two of her supervisors, Mr. Segobia and Mr. Chidester, knew that she was working overtime from home and was not receiving compensation for the work. This evidence is sufficient to create genuine issues of material fact as to each of the three elements outlined above. The court therefore denies Defendant's motion for summary judgment on Plaintiff's claim for denial of overtime compensation.

### B. Equal Pay Act and Title VII Sex Discrimination Claims

■ Plaintiff also advances claims under the EPA and Title VII based on Defendant's failure to pay her a salary equal to that being earned by male warehouse supervisors. Defendant moves for summary judgment on both claims, and Plaintiff con-

cedes that she cannot make out a prima facie case for either claim. The court therefore grants summary judgment to Defendant on Plaintiff's EPA and Title VII sex discrimination claims.

### C. FLSA and Title VII Retaliation Claims

■ Plaintiff's next two claims are for violation of the anti-retaliation provisions of the FLSA (which includes the EPA), 29 U.S.C. § 215(a)(3), and Title VII, 42 U.S.C. § 2000e–3(a). Where, as here, there is no direct evidence of retaliation, the court applies the three-step, burden-shifting analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir.1997) (citation omitted) (applying *McDonnell Douglas* analysis to FLSA retaliation claim). Under the *McDonnell Douglas* analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff presents a prima facie case, then the burden shifts to the defendant to offer evidence suggesting a legitimate, non-discriminatory reason for the adverse employment action taken against the plaintiff. *Id.* Once the defendant articulates a legitimate, non-discriminatory reason, the ultimate burden reverts to the plaintiff to demonstrate an issue of material fact as to whether the proffered reason is pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted).

### 1. Prima Facie Case

■ To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action subsequent to or contemporaneously with engaging in the protected activity; and (3) a causal connection existed between the employee's protected activity and the adverse employment action. *Robbins v. Jefferson County Sch. Dist. R–1*, 186 F.3d 1253, 1258 (10th Cir.1999) (citation omitted) (Title VII); *Conner*, 121 F.3d at 1394 (citation omitted) (FLSA). Here, Defendant contends that Plaintiff cannot satisfy either the first or the third elements of her prima facie case. The court disagrees.

■ Defendant first argues that Plaintiff cannot show that she engaged in protected activity under the FLSA because that statute only protects employees who have "filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). Defendant maintains that the fact that Plaintiff never filed a formal or informal complaint with any state or local agency or any formal written complaint with Defendant prior to her discharge is per se fatal to her FLSA retaliation claim. However, "it is the assertion of statutory rights" (*i.e.*, the *advocacy* of rights) by taking some action adverse to the company—whether via formal complaint, providing testimony in an FLSA proceeding, complaining to superiors about inadequate pay, or otherwise—that is the hallmark of protected activity under § 215(a)(3). *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir.1996). It is well-settled in the Tenth Circuit that even the "unofficial assertion of rights through complaints at work" constitutes protected activity under the FLSA. *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (citations omitted). Thus, Plaintiff's failure to file a formal complaint about the disparity in pay between herself and the male warehouse supervisors prior to her

discharge is not per se fatal to her FLSA claim.[1]

■ Defendant next argues that Plaintiff cannot show that she engaged in protected activity under either the FLSA or Title VII because any statements or complaints she made to Defendant regarding her salary lacked the requisite level of specificity to show that she believed she was being treated unfairly because of her sex. In *Garcia–Paz v. Swift Textiles, Inc.*, Judge Vratil of this District addressed the specificity required for statements or complaints to qualify as protected activity:

> While some courts have indicated that vague references to unspecified discrimination are not protected, no clear rule has emerged as to the level of specificity required, and the standard employed by most courts is not exacting.
>
> Employees often do not speak with the clarity or precision of lawyers. At the same time, however, employers need not approach every employee's comment as a riddle, puzzling over the possibility that it contains a cloaked complaint of discrimination. But the thrust of inartful, subtle, or circumspect remarks nevertheless may be perfectly clear to the employer, and the Court discerns no evidence that Congress intended to protect only the impudent or articulate. The relevant question, then, is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.

873 F.Supp. 547, 560 (D.Kan.1995) (internal citations omitted).

In this case, Plaintiff has presented evidence that between March and July of 2001 she specifically confronted Jeff Jones and asked him whether she was not receiving her raise because she was a woman and the company did not want to pay her the same as a man. At that time, she also pointed out to Mr. Jones that she was the only female supervisor and that she was making a lot less money than the male supervisors. When Defendant eventually awarded her the $1,600 per year raise in July 2001—still leaving her salary well below that of the male supervisors—Plaintiff approached Mr. Jones and Steve Bryan and expressed the following: "I told [them] I was very unhappy and I would have to consider other means to receive gratification [or, in other words] ... have to seek other avenues to receive the compensation I had been promised." Viewing the evidence in the light most favorable to Plaintiff, the court concludes that these statements sufficiently conveyed to Defendant Plaintiff's concerns that Defendant was acting in an unlawful discriminatory manner. Plaintiff has therefore satisfied the first element of her prima facie case that she engaged in protected activity under the FLSA and Title VII.

■ Defendant does not contest that Plaintiff suffered an adverse employment action when Defendant terminated her employment on August 15, 2001. Defendant does contend, however, that Plaintiff has failed to establish that there was any causal connection between the protected activity in which she engaged and the termination of her employment. "The causal connection element requires that plaintiff establish that the protected opposition and adverse action are not wholly

---

1. Defendant does not advance the same argument with respect to Plaintiff's Title VII retaliation claim, presumably because even a literal reading of Title VII's anti-retaliation provision makes clear that informal complaints about discrimination constitute protected activity. See 42 U.S.C. § 2000e–3(a) (protecting any employee who "opposes" discrimination or "participates in" Title VII's processes).

unrelated, and such an inference is permissible where the adverse action closely follows the protected activity." *Garcia–Paz,* 873 F.Supp. at 560 (internal citations omitted). Here, Plaintiff engaged in protected activity on or about July 20, 2001 when she confronted Mr. Jones and Mr. Bryan about the insufficiency of her raise. Mr. Jones left for vacation shortly after the confrontation, and Plaintiff's employment was terminated within one or two days of his return, on August 15, 2001. Given that the Tenth Circuit has held that a one and one-half-month period between protected activity and an adverse action may, by itself, establish causation, *see Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) (citing *Ramirez v. Okla. Dep't of Mental Health,* 41 F.3d 584, 596 (10th Cir.1994)), the court concludes that the period of less than one month between Plaintiff's protected activity and the termination of her employment is sufficient to satisfy the third element of her prima facie case.

The court notes, but is not persuaded by, Defendant's argument that Plaintiff cannot establish a causal connection in this case because Defendant allegedly contemplated the elimination of Plaintiff's position prior to Plaintiff engaging in any protected activity. Defendant relies on a memo dated June 3, 2001 from Mr. Bryan to the file stating the following in regard to Plaintiff: "Received evaluation and merit increase request from Jeff Jones on 06/06/01. Will not take action until a decision is made reference the elimination of her position in Operations and possible transfer to Customer Satisfaction Department."[2] Defen-

dant contends that, under the United States Supreme Court's decision in *Clark County School District v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), Mr. Bryan's memo negates Plaintiff's evidence of causation. In *Breeden,* the defendant contemplated transferring the plaintiff to a different position, and then subsequently learned that the plaintiff had filed a lawsuit against it under Title VII. 532 U.S. at 271–72, 121 S.Ct. 1508. One month later, the defendant ordered the transfer, prompting the plaintiff to claim that the transfer was in retaliation for filing her lawsuit. *Id.* at 272, 121 S.Ct. 1508. The Supreme Court disagreed, holding that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id.*

The court believes this case to be distinguishable from *Breeden* for two primary reasons. First, there is a genuine issue of material fact as to whether Plaintiff engaged in protected activity prior to June 3, 2001. Plaintiff testified in deposition that she first confronted Mr. Jones with allegations of disparate treatment between herself and the male warehouse supervisors sometime between March and June of 2001. Taking the facts in the light most favorable to Plaintiff, the court will assume that the confrontation occurred prior to the date that Mr. Bryan wrote his memo, and that, accordingly, Plaintiff's protected activity pre-dated any contemplation of the elimination of her position.[3]

---

**2.** The court notes that, strangely, although Mr. Bryan dated his memo June 3, 2001, he states that he received the evaluation and merit increase request from Mr. Jones on June 6, 2001, three days in the future.

**3.** Although the court recognizes that Plaintiff's initial allegations were made to Mr.

Jones, and not Mr. Bryan, the court finds that to be immaterial given that Mr. Jones and Mr. Bryan worked closely with one another with respect to Plaintiff's salary increase and were both decisionmakers in Plaintiff's ultimate discharge. Again, drawing all reasonable inferences in Plaintiff's favor, the court concludes that it can be reasonably assumed that

Second, Mr. Bryan's memo contemplates the elimination of Plaintiff's position *and* her transfer to a different department. It does not contemplate her complete discharge. Because Plaintiff suffered an adverse employment action more severe than that originally contemplated by Defendant, the court believes that this case falls outside of the holding in *Breeden.*

### 2. Legitimate, Non–Discriminatory Reason

██ Because Plaintiff has satisfied the elements of her prima facie case, the burden shifts to Defendant to offer evidence suggesting a legitimate, non-discriminatory reason for terminating Plaintiff's employment. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Defendant has offered evidence that it terminated Plaintiff's employment because it was eliminating her Warehouse Administrative Supervisor position as a cost-cutting move. Defendant has satisfied its burden of production.

### 3. Pretext

██ Finally, the ultimate burden shifts to Plaintiff to demonstrate an issue of material fact as to whether Defendant's proffered reason is pretextual. *Hicks,* 509 U.S. at 507–08, 113 S.Ct. 2742 (citation omitted). Pretext can be established if the plaintiff shows either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citation omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing*

*Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

██ Here, the court concludes that Plaintiff has satisfied her burden of raising a genuine issue of material fact as to pretext. As noted, Defendant contends that it terminated Plaintiff's employment because it was eliminating her position as part of a cost-cutting move. However, Plaintiff has presented evidence that she was never informed that her position was being eliminated and that, in fact, Mr. Bryan told her in their August 15, 2001 meeting that she was being discharged for the "incidents" with LaDonna Spies and Josh Rennas. That evidence, combined with the evidence previously discussed with respect to Plaintiff's prima facie case, is sufficient to raise a genuine issue of material fact as to pretext. The court therefore denies Defendant's motion for summary judgment as to Plaintiff's FLSA and Title VII retaliation claims.

### D. Title VII Administrative Exhaustion

██ Defendant also moves for summary judgment on Plaintiff's Title VII claims, arguing that Plaintiff failed to exhaust her administrative remedies because she did not cooperate with the Equal Employment Opportunity Commission ("EEOC") in its investigation of her charge of discrimination. Specifically, Defendant contends that Plaintiff sent an initial letter alleging discrimination to the EEOC on September 24, 2001. On October 17, 2001, an EEOC investigator sent a letter to Plaintiff stating, "The information you submitted does not constitute and has not been filed as a charge. Additional information from you is needed to determine the nature and scope of an investigation, if any, into your allegations." Defen-

Mr. Bryan had knowledge of Plaintiff's protected activity by June 3, 2001.

dant contends that Plaintiff's EEOC file indicates that she had no further contact with the EEOC until March 28, 2002 when her attorney sent a letter requesting that the EEOC issue a Notice of Right to Sue. The EEOC issued the notice on April 4, 2002.

■ Although Defendant correctly notes that Title VII's administrative exhaustion requirements include the responsibility to fully cooperate with the EEOC's investigation of Plaintiff's charge of discrimination, *see McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1105–07 (10th Cir.2002), the court does not find that Plaintiff failed to cooperate in this case. Notably, although Defendant contends that Plaintiff's EEOC file is devoid of evidence of contact by Plaintiff with the EEOC between the initial letter sent on September 24, 2001 and her attorney's letter requesting a Notice of Right to Sue on March 28, 2002, Plaintiff has offered evidence demonstrating that she had an interview with her EEOC investigator on January 4, 2002. Absent any other indication that Plaintiff failed to cooperate with the EEOC, the court deems Plaintiff's evidence sufficient to find that Plaintiff exhausted her administrative remedies. The court therefore denies Defendant's motion for summary judgment on Plaintiff's Title VII claims for failure to exhaust.

### E. Breach of Contract Claim

■ Plaintiff's final claim is for breach of contract based on Mr. Jones's representation to her in January 2001 that if she accepted the Warehouse Administrative Supervisor position, she would be paid the same amount as the rest of the warehouse supervisors. Defendant argues that it is entitled to summary judgment on this claim because mere oral statements by employers cannot give rise to an enforceable contract. The court disagrees.

To support its argument, Defendant relies primarily on Judge Crow's opinion in *Land v. Midwest Office Technology, Inc.*, 114 F.Supp.2d 1121 (D.Kan.2000). In *Land*, the court explained that "[a]lthough the question of the existence of a contract is usually a question of fact, where the alleged · promises are nothing more than vague assurances, the issue can be decided as a matter of law." 114 F.Supp.2d at 1147 (citation omitted). The *Land* court concluded that the employer's oral promise to employ the plaintiff "until her retirement" constituted a vague assurance about the future. *Id.* The court therefore granted summary judgment to the employer, holding that there was no intent to contract and any reliance on the statement by the employee was unwarranted. *Id.* (citations omitted). Here, the court is not presented with the same scenario. Mr. Jones's representation to Plaintiff about her salary as Warehouse Administrative Supervisor was not a vague assurance about the future. Mr. Jones explicitly promised Plaintiff that she would be paid the same as the other warehouse supervisors. With that knowledge, Plaintiff accepted the Warehouse Administrative Supervisor position and turned down an offer for the position of Back Dock Supervisor. Plaintiff performed the duties of the Warehouse Administrative Supervisor position, and Defendant never paid her the promised salary. Plaintiff seeks damages in the amount of the salary she would have earned from the date she began her duties as Warehouse Administrative Supervisor until the date Defendant terminated her employment. This evidence is sufficient to support a claim for breach of contract.

Defendant also argues that because Plaintiff was an at-will employee, she "must present evidence from a manual or handbook, along with some independent evidence probative of the employer's intent" to defeat a motion for summary judg-

ment on an implied contract claim. Defendant's argument is without merit for two primary reasons. First, Plaintiff is not attempting to assert an implied contract claim. Rather, she has advanced an express contract claim based on the oral representations of Mr. Jones. *See Land,* 114 F.Supp.2d at 1146 n. 7 (rejecting the defendant's characterization of the plaintiff's claim as one for breach of implied contract when the claim was based on an express oral promise). Second, Plaintiff's status as an at-will employee is irrelevant to her claim. She is not asserting that Defendant breached a contract by terminating her employment. She is merely claiming that Defendant breached the contract to pay her what it promised for her services as Warehouse Administrative Supervisor.

In sum, the court concludes that Plaintiff has produced sufficient evidence to raise genuine issues of material fact as to whether Defendant breached an express oral contract with her. The court therefore denies Defendant's motion for summary judgment on Plaintiff's breach of contract claim.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant's motion for summary judgment (Doc. 42) is granted with respect to Plaintiff's Equal Pay Act and Title VII sex discrimination claims and denied with respect to all other claims.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**