FILED
United States Court of Appeals
Tenth Circuit

December 10, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FRED WINTERS,

     Plaintiff - Appellant,

v.

BOARD OF COUNTY
COMMISSIONERS OF MUSKOGEE
COUNTY, OKLAHOMA; CHARLES
PEARSON, in his official capacity as
Sheriff of Muskogee County, Oklahoma,

     Defendants - Appellees.

No. 15-7011
(D.C. No. 6:11-CV-00441-JHP)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **PHILLIPS**, Circuit Judges.
_____

    Plaintiff Fred Winters appeals from the district court's decision granting

summary judgment in favor of Defendants Board of County Commissioners of

Muskogee County ("the Board") and Sheriff Charles Pearson. We have jurisdiction

under 28 U.S.C. § 1291. We affirm in part and reverse and remand in part.

_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

I.  Procedural Background

Plaintiff filed an amended complaint alleging that Defendants terminated him from his position as a deputy sheriff in retaliation for his complaint about violations of the Fair Labor Standards Act (FLSA).  He also alleged that he was terminated in violation of a clearly articulated public policy of the State of Oklahoma.

Defendants filed a partial motion to dismiss and shortly thereafter a motion for summary judgment.  Plaintiff filed a response to the partial motion to dismiss and filed what he thought was a separate response to the motion for summary judgment.  Plaintiff, however, had mistakenly filed a duplicate copy of his response to the motion to dismiss instead of a separate response to the motion for summary judgment.

Plaintiff's counsel did not realize his mistake until the district court issued its decision granting summary judgment in favor of Defendants.  In the decision, the district court noted that Plaintiff had not included a statement of facts in response to Defendants' statement of undisputed facts, and therefore that the court was going to deem admitted all of the Defendants' facts.

Plaintiff filed a motion for relief from and reconsideration of final judgment.  The district court granted the motion, finding that "counsel's failure to file a response to Defendants' Motion for Summary Judgment was due to excusable neglect under Fed. R. Civ. P. 60(b)(1)."  Aplt. App., Vol. III at 98.

Plaintiff was then able to file a Supplemental Response in Opposition to Defendants' Motion for Summary Judgment, which included responses to

2

Defendants' statement of undisputed material facts. Defendants filed a reply to the supplemental response, and then the district court issued an "Amended Order and Opinion."

In its Amended Order and Opinion, the district court again granted summary judgment in favor of Defendants. The district court dismissed Plaintiff's FLSA claim against the Board after concluding it was not Plaintiff's employer and that Plaintiff's claims were properly brought only against the Sheriff. The district court then determined that Plaintiff did not engage in any protected activity under the FLSA, and, alternatively, that Plaintiff's evidence did not support a retaliation claim. Finally, the district court concluded that Plaintiff's state-law claim failed because he had not set forth a sufficient public policy to support his claim. Plaintiff now appeals.

## II. Discussion

"We review a district court's summary judgment decision de novo, applying the same standard as the district court." *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 703 (10th Cir. 2012) (internal quotation marks omitted). Under the relevant standard, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "In applying this standard, we examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party . . . ." *McBride*, 688 F.3d at 703 (internal quotation marks omitted).

A.  *FLSA Retaliation Claim*

We first address Plaintiff's claim that he was wrongfully discharged in retaliation for engaging in protected activity under the FLSA.  This court reviews retaliation claims under the *McDonnell-Douglas* analytical framework.  *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997).  Under that standard, the Plaintiff must initially establish a prima facie case of retaliation.  To do so, the Plaintiff must show that:  (1) he engaged in protected activity; (2) he suffered an adverse action; and (3) a causal connection existed between the protected activity and the adverse action.  *Id*. at 208-09.

We first note that the analysis of Plaintiff's FLSA claim in the district court's Amended Order and Opinion is almost the same as its analysis in its original Order and Opinion.  The "Introduction" section of the amended opinion, which includes the factual background, is identical to that in the original order.  *Compare* Aplt. App., Vol. II at 265-68 *with id*., Vol. III at 224-26.  Similarly, the discussion of Plaintiff's FLSA claim in the amended opinion is identical to that in the original opinion. *Compare id*., Vol. II at 268-271, 275-76 *with id*., Vol. III at 227-29, 234-35.  Both versions include the statement that "Plaintiff has not shown, *under the facts as deemed admitted*, that he engaged in any protected activity or that his termination was in retaliation for complaining about the purported denial of overtime."  *Id*., Vol. II at 270 and *id*., Vol. III at 228-29 (emphasis added).  Both decisions also contain a subsection titled, "The Evidence Does Not Support any Retaliation Claim," in which the district court explains that because Plaintiff did not include any statement of facts

4

in response to Defendants' statement of undisputed facts, the Court "deems admitted all material facts set forth in the statement of the material facts of the movant." *Id.*, Vol. II at 275-76 and *id.*, Vol. III at 234.

The problem with the district court's using in its amended decision the facts and analysis from its original decision is that the factual background and analysis ignore that Plaintiff's supplemental pleading (filed with the permission of the district court) includes factual statements contradicting Defendants' statements of undisputed material facts. *See id.*, Vol. III at 107-11. The district court erred by not considering Plaintiff's facts when ruling on the motion for summary judgment.

We view the facts in the light most favorable to the Plaintiff as the non-moving party, *see McBride*, 688 F.3d at 703. Plaintiff was a deputy sheriff in the Muskogee County Sheriff's Department. In early January 2010, the night before his day off, he was called and asked to drive a new patrol car to Tulsa the next day to be outfitted with equipment. He did not want to drive the patrol car to Tulsa, but did so since he was asked to do so. Later, on his time sheet, he requested 2.5 hours of "comp time" (overtime) for doing so. The time sheet was returned to him stating that the request for comp time had been denied.

After learning that his comp time request had been denied, he went to Chief Deputy Terry Freeman and asked why he was denied the hours. Plaintiff testified at his deposition that Chief Deputy Freeman said, "per the sheriff, you're denied, and what are you going to do about it." Aplt. App., Vol. III at 164. Plaintiff stated that

5

he "could ask the Labor Board." *Id.* Chief Deputy Freeman then jumped up and told Plaintiff to stay in his office.

Chief Deputy Freeman returned with Sheriff Charles Pearson and Undersheriff Randy Perryman. Plaintiff testified that upon returning, Chief Deputy Freeman walked behind his desk and started pointing his finger and yelling and said, "you don't come in here yelling and screaming at me. And I said, oh, like you're doing to me right now, and I did it in a monotone voice." *Id.* Plaintiff further testified that Sheriff Pearson then said, "I've given you a 30,000 car and you're disputing two-and-a-half hours comp time." *Id.*

Plaintiff said that it wasn't his car, it was the county's car, and that he "was there wanting to know why [he] wasn't getting [his] two-and-a-half-hours, my comp time." *Id.* Plaintiff testified that Sheriff Pearson said something like, "what are you going to do about it," and Plaintiff responded, "well, I can ask the Labor Board." *Id.* at 165. Plaintiff further testified that the Sheriff then became "agitated," and said: "You know something, Fred? Your services are no longer needed." *Id.* at 164.

In their motion for summary judgment, Defendants argued that they were entitled to summary judgment because Plaintiff failed to meet his burden of proving causation. In support, Defendants reasoned as follows: "Plaintiff's only evidence that his termination was retaliatory is his own testimony that while Sheriff Pearson was in Chief Deputy Freeman's office, Plaintiff mentioned contacting the [Department of Labor (DOL)] regarding the denial of his overtime for the Tulsa trip." *Id.*, Vol. II at 30. Defendants further noted that "each of the three individuals in the

6

room, Sheriff Pearson, Chief Deputy Freeman and Undersheriff Perryman, testified that Plaintiff never mentioned the DOL after Freeman returned and Sheriff Pearson and Undersheriff Perryman came into the room." *Id*. Defendants also argued that "in Plaintiff's initial testimony, he did not indicate he mentioned the DOL when Sheriff Pearson and Perryman were in the room." *Id*.

On appeal, Defendants note in their statement of the facts that there was a discrepancy between Plaintiff's testimony and the testimony of the other three people in the room about whether Plaintiff mentioned the Labor Board in front of the Sheriff. Defendants further note their position that Plaintiff did not initially testify about mentioning the Labor Board in front of Sheriff Pearson but instead mentioned it "[i]n subsequent testimony." Aplee. Br. at 6.[1] Defendants appear to recognize in their argument section, however, that a dispute over what was said at the meeting is

_____

[1] Defendants' assertion that Plaintiff's not initially testifying that he had mentioned the DOL when Sheriff Pearson was in the room suggests that he testified about it at a later date. But his deposition testimony on that issue occurred almost immediately after he first testified about what happened on the day he was terminated. *See* Aplt. App., Vol. III at 164-165. After he testified about what happened that day, the attorney deposing him started to ask him another question when Plaintiff interrupted him to say:

> A Oh, I did -- I did mention that I was going to the Labor Board.
>
> Q Oh, you did?
>
> A Yes. I mentioned that – when – when [Sheriff Pearson] asked me about the same thing, he said, well, what – what are you doing to do about it. I also mentioned, well, I can ask the Labor Board. And that's when he – he said, your services are no longer needed.

*Id*. at 165. There was no significant time-gap between Plaintiff's initial testimony about what happened on the day he was terminated and his testimony that he had mentioned going to the Labor Board in front of Sheriff Pearson.

7

not proper for resolution at the summary judgment stage.  They now state that "viewing the evidence in the light most favorable to [Plaintiff], he asked Sheriff Pearson if the purported denial of compensatory time was final, and, when he was told it was, made a single statement about going to the 'Labor Board.'"  *Id*. at 16.

Defendants argued below and on appeal that even if Plaintiff testified that he did mention the Labor Board, his comment would not be material to causation.  They contend this is so because the Sheriff had already decided to credit Plaintiff's time for the Tulsa trip and submitted written approval for it before he terminated Plaintiff. Defendants therefore argued that "any alleged threat to call the DOL was irrelevant as on the day Plaintiff was terminated, the two officials knew Plaintiff's compensation was in complete compliance with overtime requirements."  Aplt. App., Vol. II at 30.

Defendants did not cite to any legal authority to support this proposition, and we do not agree that it alters the causation analysis.  Plaintiff's claim is that he was fired after he had complained about not getting paid overtime and had threatened to advise the Labor Board about it.  To bring a retaliation claim, Plaintiff does not have to show that the Defendants' conduct was actually illegal under the FLSA.  *See Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (explaining that the retaliation provision in the FLSA "protects conduct based on a good faith, although unproven, belief that the employer's conduct is illegal.").  When Plaintiff complained, he knew only that the Sheriff had denied his request for comp time. Even if Defendants had decided to credit the time without telling Plaintiff, they could

8

still have terminated him in retaliation for complaining about the denial of comp time and threatening to go to the Labor Board.

Viewing the evidence in Plaintiff's favor, one can infer that the Sheriff was upset about Plaintiff's decision to claim the comp time and then to complain about its denial. A few days after the Tulsa trip, but before the personal meeting described above, the Sheriff sent a text message to Plaintiff, asking: "Did you charge for taking your 24000 dollar car I worked to get yaw. To have 6000 worth of the top of the line equipment installed. Did u charge comp?" Aplt. App., Vol. III at 129. And the Plaintiff testified that the Sheriff was "agitated" at the meeting when Plaintiff was asking about the comp time and said to him, "I've given you a 30,000 car and you're disputing two-and-a-half hours comp time." *Id*., Vol. III at 164. The Sheriff terminated Plaintiff within about three minutes of making that statement.

Plaintiff's complaint that he was not getting paid for overtime and his threat to go to the Labor Board are material to causation. The Sheriff's earlier decision to pay Plaintiff's request for comp time/overtime in compliance with the FLSA would not prevent or protect him from retaliating against Plaintiff for complaining about the issue and threatening to go to the Labor Board.

Finally, Defendants argued on summary judgment that Plaintiff "acted belligerently" and that it was "further *undisputed* that when Sheriff Pearson terminated Plaintiff's employment, he specifically stated that he would not tolerate Plaintiff speaking to Chief Deputy Freeman in that manner as Chief Deputy Freeman had previously saved his life." *Id*., Vol. II at 30-31 (emphasis added). But Plaintiff

9

testified to the contrary, swearing that he "was under control the whole time" and "did everything as professional as could be." *Id*., Vol. III at 169. Plaintiff also stated that at no time during the meeting did the Sheriff state why he was terminating Plaintiff. *See id.* at 129. Although Plaintiff did acknowledge that the Sheriff had said something about the Chief Deputy's having shot and killed somebody for him, nothing connected that information to Plaintiff's demeanor or tone while speaking to the Chief Deputy. *See id*. at 164. Moreover, in the Sheriff's deposition, he never said that he made the statement asserted by Defendants. He testified that "[Plaintiff] wouldn't calm down and I said your services are no longer needed." *Id*., Vol. II at 61.

The Sheriff terminated Plaintiff within about three minutes of Plaintiff's challenging the denial of his overtime hours and threatening to go to the Labor Board. Viewing the record in the light most favorable to Plaintiff, factual disputes exist about the Sheriff's motivation for terminating Plaintiff.

The district court made two rulings related to Plaintiff's FLSA claim. First, it ruled that the claim failed because Plaintiff had not engaged in protected activity. Alternatively, the district court ruled that the claim failed because no material facts were in dispute on causation. Turning first to the alternate ruling, as noted above, the district court based this ruling solely on Defendants' facts, noting erroneously that Plaintiff had failed to contest the facts and that therefore all of Defendants' facts were deemed admitted. As discussed above, viewing all of the facts in the light most favorable to Plaintiff, there are material issues of fact in dispute on causation.

10

Second, the district court's ruling that Plaintiff had not engaged in protected activity as a matter of law was based on the its conclusion that "Plaintiff's idle and stray comment [about going to the Labor Board] does not rise to the level of a complaint or proceeding under the FLSA, and therefore Plaintiff's activity is not protected." *Id.*, Vol. III at 229. We note that the Defendants did not even make this argument below and that the district court relied solely on the statutory language.

The statutory language makes retaliation unlawful where a plaintiff "filed any complaint or instituted any complaint or caused to be instituted any proceeding under [the FLSA] or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). But we have interpreted this section to "also appl[y] to the unofficial assertion of rights through complaints at work." *Love*, 738 F.2d at 387. Plaintiff went to his supervisor and complained that he was being denied compensation for hours he had worked on his day off and threatened to go to the Labor Board regarding the denial of comp time. These circumstances are sufficient to constitute protected activity under our decision in *Love*.

In sum, the district court erred in concluding that Plaintiff did not engage in protected activity as a matter of law. The district court also erred by not considering the Plaintiff's facts in ruling on the FLSA claim and there are material facts in dispute that preclude summary judgment.

B. *The Board is not Plaintiff's Employer*

For substantially the same reasons stated in the district court's decision, we agree that the Board is not Plaintiff's employer and is not subject to liability under

11

the FLSA. Under Oklahoma law, the Board is statutorily separate and distinct from the independently elected sheriff. The Sheriff is charged with the authority to appoint undersheriffs and deputy sheriffs, for whose official acts he is responsible. *See* Okla. Stat. tit. 19 §§ 516, 547, and 548 (delineating the Sheriff's authority). The Board has no authority or control over the Sheriff's employees. *See* Okla. Stat. tit. 19 § 339 (delineating the Board's powers). The Board therefore cannot be held liable as Plaintiff's employer under the FLSA. *Cf. Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1215 (10th Cir. 2002) (en banc) (holding that because a "Board lacks the power to control the hiring, termination, or supervision of a Sheriff's employees, or otherwise control the terms and conditions of their employment, there can be no basis upon which a jury could determine that the Board owes a [duty to provide accommodation under the Americans with Disabilities Act]."). The district court properly dismissed Plaintiff's FLSA claim against the Board.

C. *State-law claim*

For substantially the same reasons stated in the district court's decision, we agree that summary judgment was appropriate on Plaintiff's state-law claim for wrongful discharge in violation of public policy. We briefly address Plaintiff's argument that the Defendants and the district court misconstrued the basis for his claim. He contends that the Sheriff's Department had a policy of paying overtime as part of an employee's regular wages and that therefore his termination violated the clearly articulated public policy expressed in the Protection of Labor Act (PLA) that employers shall pay all wages that are due and owing. Oklahoma recognizes an

exception to at-will employment when an employee has been wrongfully discharged in violation of public policy. *See Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1277 (10th Cir. 2003) (citing *Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (Okla. 1989)). These "*Burk*" tort actions, however, are to be "'tightly circumscribed'" and "available only 'where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy.'" *Id.* (quoting *Burk*, 770 P.2d at 29). And "[t]he clear and compelling public policy on which the plaintiff relies must be articulated *by state constitutional, statutory, regulatory or decisional law*." *Id.* (emphasis added). We find persuasive Defendants' argument that the PLA's policy on payment of wages "cannot logically serve to transform what is, essentially, a county policy regarding the accrual, calculation and form of [overtime] compensation into state policy," Aplee. Br. at 30. Because Plaintiff has not identified the existence of a "clear mandate of public policy as articulated by constitutional, statutory or decisional law," *Burk*, 770 P.2d at 28, the district court properly granted summary judgment on his state-law claim for wrongful discharge.

III.  Conclusion

We reverse the district court's decision on the FLSA claim against Defendant Sheriff Pearson and remand for further proceedings.  We affirm the district court's decision in all other respects.

Entered for the Court

Gregory A. Phillips
Circuit Judge

14